Person Filing: William R Donges
Mailing Address: 5514 N. Crescent Ridge Drive
City, State, ZIP: Tucson, AZ 85718
Phone Number: (520) 529 6227
E-Mail Address: bdonges@attglobal.net
Representing Self, Without Attorney

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| WILLIAM R. DONGES AND CAROLYN R. DONGES, H/W<br><br>Plaintiff,<br><br>vs.<br><br>USAA Federal Savings Bank,<br><br>Defendant | CV-18-0093-TUS-RM<br><br>**FIRST AMENDED COMPLAINT** |

Plaintiff complains of the Defendant and alleges the following:

## **INTRODUCTION**

<u>1.</u>     This Complaint is about a major bank, Defendant USAA, when at the peak in 2010 of the Great Recession and Banking Crisis, had every legal cause of action and business justification to file a law suit to collect the very seriously delinquent and defaulted debt of Plaintiff Donges evidenced by the three home equity line of credit (HELOC) agreements executed between Plaintiff Donges and Defendant USAA, but chose instead to sleep on that right for more than the six-year time period allowed under Arizona law to initiate such foreclosure action. That fact gives rise to several claims described in this Complaint.

In October 2017, Defendant USAA sent Plaintiff Donges a Notice of Default and on November 27, 2017 filed a Notice of Trustee Sale in an action to collect on the debt

recorded in the loan account identified as HELOC Acct No. 1055.  Both notices were sent after the Statute of Limitations described in A.R.S 12-548 (A) (1) had run its six-year course rendering such a legal action as time-barred.  Plaintiff asserts and will establish through the facts presented in this Complaint, additional evidence gathered in discovery and presentation of the legal issues in motions and at trial that by December 31, 2010, Defendant USAA had a very righteous cause of action to initiate an action on Plaintiff Donges debt but chose instead to not avail itself of that right.  Plaintiff Donges further asserts that no events took place in the ensuing six-year period that would toll the continuous run of the Statute.  Therefore, Plaintiff Donges asks this court to:  issue a declaratory judgment that the debt evidenced by the three HELOC Agreements is no longer legally enforceable; order the cancellation of the currently scheduled Trustee Sale ID. #17-03626; and issue a permanent injunction enjoining Defendant USAA from any future law suits or foreclosure actions on any of the three HELOC Agreements or Trust Deeds securing those agreements.

Plaintiff Donges asserts that Defendant USAA did by its submission of an IRS form 1099-C, Cancellation of Debt, with an Event Code G, No Further Collection Activity, without further clarification or explanation or disclaimers, raise a reasonable expectation on the part of Plaintiff Donges that no further collection activity would take place.  Plaintiff Donges asserts a claim of Promissory Estoppel based on the promise of Defendant USAA not to pursue further collection of the outstanding balance and Plaintiff Donges' subsequent actions in reliance on that promise.

Plaintiff Donges raises a claim of Estoppel by Inaction arising from Defendant USAA's failure to respond to Plaintiff Donges' dispute of a Notice of Default submitted with false information subsequent to the expiration of the Stature of Limitations.  Plaintiff Donges seeks relief in the form of an order nullifying any subsequent legal actions on the part of Defendant USAA.

Plaintiff Donges raises a claim of Estoppel by Misrepresentation when attorneys representing Defendant USAA stated in a letter intended to inform Plaintiff Donges that it

had been retained to conduct a non-judicial foreclosure sale and that the debt reported in the letter would be assumed to be valid unless within 30 days Plaintiff Donges disputed the validity of the debt. Defendant USAA chose not to fulfill its representations and 12 days later filed its Notice of Trustee Sale. Plaintiff Donges seeks a court order vacating the Notice of Trustee Sale requiring Defendant USAA to require the leave of the court before refiling any such notice.

Plaintiff Donges seeks a title-clearing through an order cancelling each of the three trust deeds currently recorded in the Pima County Recorder's Office with Defendant USAA as beneficiary and Defendant USAA's nominee as Trustee. A.R.S. 33-816, provides that any action or sale of trust property or any action to foreclose a trust deed shall be commenced within the period prescribed by law for the commencement of an action on the contract secured by the Trust Deed. The Statute of Limitations, A.R.S. 12-548(A)(1), having run its six-year course on the HELOC Agreements makes any action on the three trust deeds as time-barred. This Quiet Title action seeks to quiet the title to Plaintiff Donges' Property by removing any cloud presented by the three recorded Trust Deeds.

### JURISDICTION AND VENUE

2.      On January 17, 2018, Plaintiff Donges filed a Complaint against Defendant USAA in Arizona Superior Court in and for the County of Pima and was assigned Case Number C20180251. The venue was properly given that Plaintiff Donges is a resident of Pima County, State of Arizona, the events giving rise to the Complaint took place in Arizona and the Applicable Laws are Arizona Revised Statutes. A Summons was issued, and service confirmed by attestation on January 19, 2017.

3.      On February 19, 2018, Defendant USAA removed the matter into United States District Court for Arizona alleging complete diversity of jurisdiction under 28 U.S.C. S 1441(a) and the amount of the matter in controversy exceeds $75,000 as defined in U.S.C. 28. Plaintiff Donges does not object to the removal.

**PARTIES**

4.    Plaintiff(s) are husband and wife.  Given that the considerable anticipated legal costs of pursuing a Complaint of this nature exceed the Plaintiff(s) current primarily retirement income based financial resources, Plaintiff(s) submit this Complaint representing themselves as non-attorneys, although Carolyn Donges is a retired member of the Arizona Bar who has not practiced in the U.S. in over 30 years. Plaintiff Donges as Pro Se litigants recognize the importance of conformance to all Federal and local Rules of Civil Procedure but asks the Court's indulgence in applying a liberal interpretation to this pleading.

5.    Defendant is USAA Federal Savings Bank ("USAA FSB"), a federally chartered savings bank licensed to conduct business in Arizona with corporate headquarters at McDermott Building, 9800 Fredericksburg Rd., San Antonio, TX 78288.  USAA Federal Savings Bank offers a variety of banking products and services for military members and veterans.  USAA Federal Savings Bank is a wholly owned subsidiary of USAA Capital Corporation (CapCo) which in turn is a wholly owned subsidiary of the United Services Automobile Association and its property and casualty insurance affiliates.

**STATEMENT OF FACTS**

6.    The matter discussed in this Complaint involves a home equity line of credit (HELOC) product offered and serviced by Defendant USAA, the Lender and Creditor, to Plaintiff Donges, the Borrower and Debtor.  The specific HELOC loan product acquired by Plaintiff Donges is classified as an open-ended, revolving line of credit secured by a lien against the equity in residential real estate, a distinct category of credit product recognized by banking regulators and in federal and state law as possessing unique characteristics differentiating it from other categories of closed-end loans, such as first mortgages, second mortgages, home equity loans and installment loans, and other types of open-end credit not secured by real estate, such as credit cards and deposit linked lines of credit.

7.    The terms and conditions of the specific HELOC product offered by Defendant USAA to Plaintiff Donges are recited in a standard form, multi-state written

credit agreement hereinafter referred to as the "HELOC Agreement" [Exhibit A], duly executed by both parties,

8.     The HELOC Agreement describes an open-ended, revolving line of credit secured by a Trust Deed (Exhibit A] allowing continuous borrowing and repaying up to a stated credit limit over a 240 month draw period so long as the agreed terms are met.  The agreement does not incorporate a repayment period where the then current balance is converted to an amortizing loan or any other method of amortizing the outstanding balance through installments.

9.      The HELOC Agreement stipulates a minimum periodic [monthly] payment of the accrued finance charges as computed on the last day of the billing period based on a variable interest rate [Wall Street Journal Prime + 0.5%].  The amount of each computed payment, plus any billed but unpaid accrued finance charges, appears on a periodic statement of account with the payment due twenty-five days later by the date shown on the statement.

10.     The HELOC Agreement defines payment default as the failure to make a minimum payment of the accrued finance charges each period by the Payment Due Date shown on the Periodic Statement.

11.     The HELOC Agreement states that after a payment default and after giving any legally required notice and opportunity to cure, Defendant USAA may at its option and, among other Remedies stated in para. 19 of the HELOC Agreement, Terminate the Line of Credit and Accelerate the loan by making all or part of the outstanding balance immediately due.

12.     Security for the debt evidenced in the HELOC Agreements is a lien on the residential real estate Property of the borrower as recited in a standard form Trust Deed (Exhibit B), the terms and conditions contained therein mirror in substance the terms and conditions recited in the HELOC Agreement.

13.     The Property described in the Trust Deed is located at 5514 N. Crescent Ridge Drive, City of Tucson, County of Pima, State of Arizona, identified as Tax Parcel No.: 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.  Said property was acquired newly built in February 1993 and has served

continuously as Plaintiff Donges' legal residence, although from 1993 to 2001 Plaintiff spent considerable time living and working in Europe in an expatriate capacity.

14. At all times since the inception of the loans, Defendant USAA's security position was and remains junior to a mortgage held by Wells Fargo.

15. On April 9, 2004 Plaintiff(s) executed a Home Equity Line of Credit Agreement with the Defendant identified as loan number 231994 with a credit limit in the amount of $50,000 secured by a Trust Deed on the residence of the Plaintiff.

16. On March 25, 2005, Plaintiff Donges executed a second Home Equity Line of Credit Agreement and Trust Deed with the Defendant registered as loan number 326637 with a credit limit of $50,000 under essentially the same terms and conditions as described and consolidated the account under loan account number 1055.

17. On December 20, 2005, Plaintiff Donges executed a third Home Equity Line of Credit Agreement and Trust Deed with the Defendant registered as loan number 431534 with a credit limit of $183,800.00 under essentially the same terms and conditions as described in Exhibit B and consolidated the account under loan account number 1055.

18. In the period from January 2006 to January 2008, Defendant Donges was able to service the debt according to agreed terms, although the credit line utilization grew to 100 percent by January 2008.

19. By January 2008, the Great Recession and Banking Crises resulted in the termination of the microfinance infrastructure program for banks. Plaintiff Donges was developing a comprehensive micro- and small business banking system in conjunction with a European partner and a large Indian bank, largely funded by the line of credit in HELOC Acct. No. 1055. These economic conditions also limited Plaintiff Donges' opportunities to fully reestablish his bank consulting practice in the European markets where his expertise was centered.

20. By early 2008, Defendant USAA was or should have been aware from periodic credit reports required by banking regulators of Plaintiff Donges' diminished financial capacity as well as the rapidly declining property values in Arizona, likely leading

to a Special Mention classification indicating close attention should be paid to the performance of the account.

21.     On February 2, 2008 when HELOC Acct No 1055 turned 15 days past due, Defendant USAA issued a NOTIFICATION OR SUSPENSION OR CANCELLATION OF RIGHT TO FUTURE CREDIT ADVANCES UNDER LINE OF CREDIT DUE TO NONPAYMENT, one of the default Remedies described in the HELOC Agreement.

22.     From February 2008 to September 2009, Plaintiff Donges was able to service debt payments to Defendant USAA largely due to a substantial reduction in the prime rate arising from the Federal Reserve's quantitative easing program.

23.     By the last quarter of 2009, Plaintiff Donges' was forced to discontinue efforts at operating his banking consulting practice. Plaintiff Donges' income and cash flow were reduced to social security payments and the limited wage income of Plaintiff Carolyn Donges.

24.     Absent cash flow from consulting activities, Plaintiff Donges was no longer able to service the periodic minimum payments so that in October 2009, HELOC Acct No. 1055 entered a continuing state of default, a condition from which it never recovered.

25.     It is a widely accepted fact that in 2009 the level of defaults and subsequent foreclosure filings on residential real estate secured loans reached a historic level severely stressing the credit administration capacity of all lenders with large portfolios of such loans. According to published reports, Defendant USAA faced many of the same credit administration capacity issues coupled with the further burden of a major computing system replacement program in progress.

26.     By late 2009, Defendant USAA was or should have been aware from Plaintiff Donges' admissions coupled with credit reports and the high credit line utilization of Plaintiff Donges' further diminished financial capacity indicating a low probability of a improvement in financial condition in the foreseeable future.

27.     By late 2009, the value of the Property securing the HELOC Agreement declined to approximately $350,000, for a combined loan ($383,000) to value ratio of 114

percent and based on published real estate forecasts for the southern Arizona market, there was little hope for improvement in home values over the foreseeable future.

28.     By year-end 2009, continued defaults, diminished borrower capacity and declining security value should have or did result in Defendant USAA classifying HELOC Acct. No 1055 as Substandard, a regulatory marker indicating the distinct possibility that the bank will sustain some loss if the deficiencies are not corrected and establishing a good business case to pursue a legal redress, such as a foreclosure, are present.

29.     On July 6, 2010, Defendant USAA gave notice to Plaintiff Donges that borrowing privileges on the HELOC Acct No. 1055 were terminated, thus satisfying one of its Remedies cited in para 19 of the HELOC Agreement.

30.     When Defendant was not able to make a returned, delinquent payment good by the end of the billing cycle, Defendant USAA informed Plaintiff Donges that no further payment extensions or accommodations would be accepted and that the loan account was in write-off status.

31.     Defendant USAA's accounting system apparently records the date of last payment on HELOC Acct. No. 1055 as September 19, 2010 while the September Periodic Statement does not record any payments on that date. [Exhibit C]

32.     On October 15, 2010, Defendant USAA issued a Foreclosure Warning and a notice of the steps Defendant USAA intended to take if Plaintiff Donges failed to resolve the debt, including blocking access to ussaa.com and deleting documents from the paperless documents area of usaa.com.

33.     As of the October 2010 Periodic Statement, HELOC Acct No 1055 was 90 consecutive days past due, a level at which banking regulators suggest classifying an account as Doubtful, a regulatory marker indicating that the default and borrower conditions make collection or liquidation of the debt in full highly questionable and improbable, an accrual of conditions to justify a legal action on the debt.

34.     Defendant USAA did take subsequent action to block access to usaa.com and did delete any documents held in its paperless documents area of usaa.com.

35. The November 2010 Statement contains accounting entries indicating that Defendant USAA placed HELOC Acct No. 1055 on a non-accruing, cash basis.

36. Defendant USAA at various times at the latter months of 2010 in verbal and written communication stated that no further payments, partial payments, payment accommodations, or payment promises would be accepted; that the line of credit was terminated and that the entire outstanding balance of $284,301.27 was immediately due and payable, thus effecting an acceleration as described in para.19 of the HELOC Agreement.

37. Despite Defendant USAA's earlier threat to refuse acceptance of further payments, on 11/26/2010 USAA did accept and post an ACH transfer from Plaintiff Donges as a credit to finance charges in the amount of $800.00. Plaintiff Donges believes said payment was intended for credit to a USAA credit card account and mis-posted to the HELOC account. Defendant USAA immediately reversed the transaction and then reposted it as a recovery to a nonaccrual interest account.

38. On a date uncertain but likely discoverable, an Agent of Defendant USAA said to be a consultant engaged by Defendant USAA to help clear up its mountain of defaulted debt, contacted Plaintiff Donges by telephone to proffer Defendant USAA's willingness to accept a payment of less than the current outstanding balance in order to remove the loan from Defendant USAA's books.

39. As of December 25, 2010, each of the business and legal factors Defendant USAA needed to establish a righteous cause of action to initiate an action on Plaintiff Donges' debt were present, including:

a) Diminished borrow capacity with near term improvement unlikely

b) Collateral value well below loan values

c) Continuous payment defaults reaching more than 120 days past due

d) Defendant's action to terminate the credit line

e) Unsatisfied demand for payment of the outstanding balance

f) Termination of access to USAA online banking service

9

40.     Each of these factors was present as of December 31, 2010, a date on which Defendant USAA had accrued the cause of action to initiate a legal action on the debt evidenced in the HELOC Agreement, thus starting the run of the Statute of Limitations.

41.     It is a widely reported fact that while the levels of defaults in residential real estate loans remained at historic highs in the fourth quarter of 2010, the rate of foreclosures declined by one-fourth over the same quarter in 2009.  The reason attributed to the decline was the very high level of negative publicity banks, including Defendant USAA, attracted because of[A1] their procedurally flawed and, in some cases, fraudulent foreclosure practices.  Banks and loan services in the last quarter of 2010 and the first quarter of 2011 were reluctant to exercise their righteous cause of action to foreclose simply to avoid attracting further negative public opinion and more intense legislative focus on consumer credit practices.

42.      As of the March 31, 2011, HELOC Acct No. 1055 was more than 180 days past due at which point banking regulations dictate that Defendant USAA recognize the loan as a Loss, charging off the outstanding balance and freezing any accrued, unpaid finance charges.

43.     The April 2011 Periodic Statement contained several internal accounting entries with an effective date of 3/31/11, including the termination of the credit line, recognizing the write-off of the accrued finance charges in the amount of $5,390.36 and recognizing the write-off of the outstanding balance of $284,301.27 as a loss.

44.     The April 2011 Periodic Statement was the last statement of account in the possession of Plaintiff Donges and believed to be the last Periodic Statement produced by Defendant USAA until the February 2017 Periodic Statement.

45.     Under the terms of the HELOC Agreement and according to federal and state banking regulations, Defendant USAA is required to produce a Periodic Statement in any billing period when there is an outstanding balance on the account, or finance charges accrue on the account requiring a minimum payment or any other financial activity takes place.

46.     Federal regulations provide an exception to the Periodic Statement requirements when a loan has been charged off in accordance with loan-loss provisions and no further fees or interest will be charged on the account. Without the accrual of finance charges, no further minimum payments become due and so long as no other financial activity takes place, the lender is not obligated to submit Periodic Statements, which Defendant USAA did not during the six-year run of the Statute of Limitations.

47.     In January 2014, Defendant issued an IRS Form 1099-C, Cancellation of Debt, reporting the discharge debt in the amount of $289,691.63 in calendar year 2013 with an identifiable event code G, used to identify cancellation of debt as a result of a decision or a defined policy of the creditor to discontinue collection activity and cancel the debt [Exhibit D].

48.     The 1099-C was received by Plaintiff Donges with no accompanying explanation as to the purpose or disclaimers as to the effect on the debt.

49.     Plaintiff Donges confirmed by telephone that Defendant USAA had issued the 1099-C and that the debt shown was cancelled but Defendant USAA's agent could offer no further information as to the purpose or effect.

50.     On February 22, 2014, Plaintiff Donges sent a letter to Defendant USAA requesting a release of lien given the reported and confirmed cancellation of the debt. Defendant USAA did not respond.

51.     In June 2014, in an attempt to obtain a cancellation of the three recorded trust deeds so as to clear a path to a reverse mortgage, Plaintiff Donges contacted Defendant USAA to determine its willingness to accept a settlement providing for cancellation of the Trust Deeds.

52.     Defendant USAA initially indicated such a settlement would be within policy, but subsequently informed Plaintiff Donges that further consideration of any settlement would require an application to a Home Equity Loan Committee.

53.     Defendant USAA furnished Plaintiff Donges with a set of forms titled Member Assistance Application (Home Equity) and Hardship Request. Plaintiff Donges completed the forms with the clear statement that the application was intended to provide

USAA with the information to consider a settlement offer, not for hardship assistance. USAA apparently disregarded this disclaimer, processed the application as a hardship request and issued a rejection based on Defendant's policy to not offer modifications on defaulted loans.

54.     On March 17, 2017, Defendant USAA mailed Plaintiff Donges a Statement of Account for HELOC Acct No. 1055 for the billing cycle 01/26/2017 to 02/22/2017.  The statement reflected a $0.00 principal balance, $0 advances, $0 payments, $0 interest payments, and $0 credit line but with a total past due of $5,390.36.  The past due accrued finance charges shown on the February 2017 Periodic Statement were unchanged from the reported accrued finance changes as of April 2011, indicating no further accruals took place since 2011.

55.     On April 7, 2017, Defendant USAA sent Plaintiff Donges a letter stating that the statement was sent during a system upgrade but did not disclaim the accuracy of information,

56.     In May 2017, Plaintiff Donges consulted attorneys, Burris and MacComber, about the feasibility of pursuing an action under A.R.S. 12-1100 to quiet the title to the Plaintiff Donges property at 5514 N. Crescent Ridge Drive, Tucson, 85718 based on expiration of the Statute of Limitations, A.R.S. 12-548, having run its course on the debt recorded in HELOC Acct No. 1055.

57.     On June 4, 2017, based on the advice of Counsel that a solid case existed for a successful quiet title action, Plaintiff Donges prepared and submitted a Quit Claim Deed Form and a check for $5.00 for each of the recorded Trust Deeds securing the HELOC agreements with a demand for a response within the 20-day period stipulated in A.R.S. 12-1100.

58.     On June 15, 2017, Defendant USAA returned the Quit Claim Forms unprocessed and the 3 checks uncashed.

59.     On October 4, 2017, Tiffany and Bosco, P.A. representing Defendant USAA sent Plaintiff Donges a NOTICE OF DEMAND FOR PAYMENT incorrectly alleging 85 delinquent payments of $599.76 each from 09/19/2010 totaling $50,972.12, plus the

Current Monthly Payment of $599.76. Said payment to be received by USAA not later than 30 days from the date of the letter. The demand letter further stated that Federal law provides borrower with thirty days after receipt of letter to dispute the validity of this debt. [Exhibit E]

60. On October 25, 2017, Plaintiff Donges sent such a letter to Tiffany and Bosco disputing the accuracy of the alleged delinquency and the authority of Defendant to demand such a payment after the Statute of Limitations has run.

61. Tiffany and Bosco and Defendant USAA failed to respond to Plaintiff's dispute letter.

62. On November 15, 2017, Tiffany and Bosco sent a letter to Plaintiff Donges stating that the firm was retained to conduct a non-judicial foreclosure sale (Trustee's Sale) pursuant to the Deed of Trust associated with "LOAN NO: XXXXXX 1055", the first of the three Trust Deeds. The amount of debt was stated to be $290,055.77. The letter further states that: "the firm will assume this debt to be valid unless, you, within 30 days after receipt of the notice, dispute the validity of the note, in which case Tiffany and Bosco will obtain verification of the debt and a copy of such verification mailed to you." [Exhibit F]

63. On November 27, 2017, twelve days later and prior to expiration of the 30-day period allowed by regulation for debt verification, Tiffany and Bosco filed a NOTICE OF TRUSTEE SALE referencing that trust deed recorded on 05/04/2004 securing the Home Equity Credit Agreement with an Original Principal Balance of $50,000.

64. Plaintiff Donges acknowledges at the time of default in the HELOC loan accounts, William R. Donges and Carolyn R. Donges each had separate credit card accounts in their names that also entered and continued in default from 2010 onward for which Defendant USAA has taken no collection action. Plaintiff Donges also had a secured [automobile] installment loan with USAA that was paid according to terms through a direct debit arrangement established before Plaintiff Donges was blocked from access to usaa.com. Plaintiff Donges has for the past 23 years to date continually and satisfactorily carried automobile insurance with USAA.

## First Cause of Action

## Statute of Limitations Bars Foreclosure

65.    Plaintiff Donges incorporates paragraphs 1-64 herein.

66.    The issue raised in this claim is whether the assembly of the facts described in para. 6 through 65 granted Defendant USAA a discoverable cause of action by December 31, 2010 to seek legal redress or relief against Plaintiff Donges in the form of an action on the debt evidenced in the three HELOC Agreements and/or a foreclosure on the three Trust Deeds securing those agreements, thus starting the running of the clock on the Statute of Limitations; and,

67.    Whether any actions on the part of Plaintiff Donges as borrower or any activity on any of the three HELOC Agreements or any of the three Trust Deeds occurred that would toll the Statute of Limitations during its statutory six-year run.

68.    Plaintiff Donges asserts that the Trustee Sale ordered by Defendant USAA on November 27, 2017 is a wrongful action having been initiated more than six-years after the defaults and related events that granted Defendant USAA a cause to pursue such an action.

69.    A.R.S. 12-548 (A)(1), Contract in writing for debt; six-year limitation, states an action for debt where indebtedness is evidenced by or founded upon a contract in writing executed within the state shall be commenced and prosecuted within six years after the cause of action accrues, and not afterward.

70.    Plaintiff Donges asserts and will establish through the facts and the preponderance of evidence that Defendant USAA did have sufficient cause of action to commence a legal action on the debt evidenced in the HELOC Agreement on or by December 31, 2010 but chose not to do so.

71.    Plaintiff Donges asserts that the Statute of Limitations on that debt started its run on or by December 31, 2010 and ran continuously until November 27, 2017 when Defendant USAA filed a Notice of Trustee Sale.

72.    A.R.S. 33-816, Limitations on action or sale of trust property, states that a trustee sale of trust property under a trust deed shall be made, or any action to foreclose a

trust deed as provided by law for the foreclosure of a mortgage on real property shall be commenced within the period prescribed by law for the commencement of an action on the contract secured by the Trust Deed.

73.     Plaintiff Donges asserts and will establish through the facts and preponderance of evidence at trial that the Statute of Limitations having run its six-year course also bars any action by Defendant USAA to initiate a Trustee Sale of Plaintiff Donges' Property.

74.     Plaintiff Donges admits that Defendant USAA was granted its cause of action to seek legal redress by Plaintiff Donges' failure to make the agreed minimum payment of the accrued finance charges when due.

75.     Plaintiff Donges admits and the Periodic Statement in the period from October 2009 to April 2011 [Exhibit C] will confirm a continuing payment default of from 30 to 60 days past due in each billing period from October 2009 to October 2010.

76.     Plaintiff Donges further admits that HELOC Account 1055 passed 90 days past due in October 2010, followed by 120 days past due in December 2010 and finally 180 days past due on March 31, 2011 when HELOC Acct No. 1055 was written-off as a loss and the delinquency status frozen.

77.     Plaintiff Donges asserts that the steadily advancing delinquency coupled with the information Defendant USAA had or should have had about the diminished financial capacity of the borrower and the declared value of its security, are factors that present both a business and legal justification for Defendant USAA to seek judicial redress or relief against Plaintiff Donges.

78.     Plaintiff Donges asserts that the HELOC Agreement, para. 19, and the Trust Deed, para, 10, recite a number of Remedies Defendant USAA may optionally apply in an event of a default but does not stipulate that any of those Remedies must be exercised before declaring an Event of Default.

79.     Plaintiff Donges asserts that the Remedy stated as "after giving any legally required notice" is moot as no such notice requirement exists in Arizona statutes.

80. Plaintiff Donges asserts that on no occasion in 2010 did Defendant USAA offer any opportunity to cure the default with the term 'cure" phrase taken to mean the offer of a loan modification, loan extension or by delinquency re-aging other than by the payment of the entire outstanding balance.

81. Plaintiff Donges asserts that while the remedy 'Terminate' is not a defined term in the agreement, 12 CFR Part 226 [TILA/Reg Z] defines 'terminate' as the lender's authority to suspend or terminate the borrower's right to future advances under the line of credit, an action invoked by Defendant USAA in February 2008, again in July 2010, and finally on March 31, 2011.

82. Plaintiff Donges asserts that the Remedy "Accelerate" is not a defined term in the agreement and the following text states "[optionally] make any part of the amount owing immediately due"

83. Plaintiff Donges asserts that unlike agreements for closed end loans and leases where the principal balance is amortized through a series of installment payments and which require an Acceleration Clause or Covenants to define under what circumstances and after what notice a lender can accelerate the payment of the outstanding balance, open-ended loans generally and the HELOC Agreement specifically have no such defined terms prescribing when, how or if acceleration takes place.

84. Plaintiff Donges asserts that Arizona courts have held that acceleration occurs when a lender undertakes some affirmative act to make clear to the borrower that the lender has accelerated the obligation by demanding payment of the outstanding balance owed the lender.

85. Plaintiff Donges asserts that Defendant USAA did in October 2010 issue a written foreclosure warning.

86. Plaintiff Donges asserts that in various verbal contacts in the latter half of 2010, representatives of Defendant USAA did clearly and affirmatively demand immediate repayment of the approximately $285,000 outstanding debt recorded in HELOC Acct No. 1055.

87.    Plaintiff Donges asserts that Defendant USAA contacted Plaintiff Donges to communicate its willingness to satisfy the demand for the payment of the outstanding balance with a payment of $200,000, an offer Plaintiff Donges was not in a financial position to accept.

88.    Plaintiff Donges asserts that by July 2010, if not earlier, Defendant USAA was or should have been aware from its compliance with banking regulations of the severely diminished financial condition of Plaintiff Donges and the unlikely probability of HELOC Acct No. 1055 becoming current in the foreseeable future.

89.    Plaintiff Donges asserts that by July 2010, if not earlier, Defendant USAA was or should have been aware from its compliance with banking regulations that the value of the Property securing the HELOC Agreement had decreased from an appraised value of $450,000 in 2004 to an estimated $350,000 or less in 2010 producing a combined loan to value of greater than 110 percent against a credit policy target of 60 percent.

90.    Plaintiff Donges asserts that as of the December 2010 Periodic Statement, HELOC Account No. 1055 became 120 days past due, a level at which coupled, with the known facts about the borrower's diminished financial condition, the below CLTV condition of the collateral, the doubtful risk classification, the prevailing economic conditions, and the assessment that collection or liquidation of the debt in full was highly was questionable and improbable, establish both a strong business and a legal case to pursue a legal action against Plaintiff Donges.

91.    Plaintiff Donges asserts that according to the April 2011 statement, HELOC Acct No. 1055 passed 180 days past due, a point at which banking regulators require that Defendant USAA recognize the outstanding balance as uncollectable and of such little value that its continuance as a bankable asset is not warranted.   The statement contained a series of financial transactions dated March 31, 2011 reflecting the termination of the account and the write-off of the outstanding balance.

92.    Plaintiff Donges asserts and para, 28 of the HELOC Agreement, reinforced by federal and state laws governing open-ended credit agreements, dictate that lenders provide borrowers with a statement of account in each period the borrower has an

outstanding balance or any activity on the account, although regulations also provide for suspension of that requirement for accounts a creditor has charged off in accordance with loan-loss provisions and will not charge any additional fees or interest on the account.

93.     Plaintiff Donges has no record of receiving and believes that Defendant USAA did not submit any Periodic Statements in any period from May 2011 to February 2017 further evidencing that no activity took place on HELOC Acct No. 1055 that required Defendant USAA to submit a Periodic Statement in that period.

94.     Plaintiff Donges asserts that the February 2017 Periodic Statement displayed zero principal balance and a total past due of $5,390.36, the amount of accrued unpaid finance charges that was frozen at the time of write-off on March 31, 2011 indicating that no finance or other charges were debited to HELOC Acct No. 1055 since March 2011.

95.     Plaintiff Donges alleges that payment transactions in an open-ended, interest only line of credit product can only be created and subsequently defaulted on when finance charges are accrued and made due by recording on a Periodic Statement so that absent finance charge accrual and the preparation of a Period Statement to bill the payment transaction, no new default can be created to toll the Statute of Limitations under the theory of continuous breach.

96.     Plaintiff Donges in September 2014 initiated an exploratory discussion about the possibility of an equitable settlement that would allow Plaintiff Donges to clear the three trust deeds held by Defendant USAA clearing the path to Plaintiff Donges obtaining a reverse mortgage.  These discussions were speculative in nature with no offer extended or accepted, promises to pay or actual payments made, nor debt acknowledged. Defendant USAA never took the possibility of a settlement seriously, instead choosing to process it as a hardship request, which it was not.

97.     Defendant USAA in its Answer to Plaintiff Donges' Initial Complaint filed in Arizona Superior Court admits that Plaintiff's line of credit was frozen after their default and that: pursuant to the default terms of Plaintiff's loan documents, the amounts owed became due.  This is a clear admission of default and acceleration.

98.     Plaintiff Donges asserts that on or about December 31, 2010 all of the business and legal elements to justify a legal action against the debt of Plaintiff Donges were present thereby starting the clock of the Statute of Limitations.

99.     Plaintiff Donges further asserts that the Statute of Limitations ran continually for the six-year limitation period from January 2011 to January 2017.

100.     Therefore, given that the Statute of Limitations had clearly run its course prior to the date Defendant USAA initiated Trustee Sale ID. #17-03626. the Court should order the cancellation of said sale.

101.     Further, Plaintiff Donges asks the court to permanently bar Defendant USAA from initiating now and in the future any legal action on the HELOC Agreements and the Trust Deeds securing those agreements.

## Second Cause of Action

### Promissory Estoppel

102.     Plaintiff Donges incorporates paragraphs 1-58 herein.

103.     The issue raised in this claim of Promissory Estoppel is whether the issuance of a 1099-C for calendar year 2013 containing the identification of the affected account number, the amount of debt discharged and an identifiable event code of G, no further collection activity, when submitted without further explanation or disclaimer, constitutes a promise on the part of the issuer to discontinue collections and cancel the debt.

104.     Plaintiff Donges asserts that the Defendant USAA submitted an IRS 1099-C ([Exhibit D] to Plaintiff Donges on or about January 15 reporting, the calendar tax year, 2013, and identification of the affected account, HELOC Acct No. 1055, the amount of debt discharged as $289,691.65, and an identifiable event code G.

105.     According to IRS regulations an Identifiable Event Code of G is used to identify cancellation of debt because of a decision or a defined policy of the creditor to discontinue collection activity and cancel the debt.

106.     Defendant USAA submitted the 1099-C with no accompanying explanation, disclaimers that the document was submitted for information purpose solely to satisfy IRS

reporting requirements, disclosures of purpose or a description of the basis for determining the amount of discharged debt.

107.     Plaintiff Donges asserts that shortly after receipt of the 1099-C, he contacted Defendant USAA with a request for clarification and received a verbal confirmation that the 1099-C was issued, and that the information reported on the form was correct and the debt was cancelled.

108.     Plaintiff Donges asserts that based on the verbal response indicting that the debt was cancelled, a letter was sent to Defendant USAA requesting a cancellation of the Trust Deeds.

109.     Defendant USAA did not respond.

110.     Plaintiff Donges asserts that given the verbal confirmation of debt cancellation by Defendant USAA, awareness of Defendant USAA's debt write-off in April 2010, the absence of Periodic Statements over the prior three years demonstrating no financial activity and the absence of affirmative action on the part of Defendant USAA to collect its debt, and the above mentioned confirmation, it was reasonable for Plaintiff Donges to accept the promise of no further collection activity at face value and make future financial plans on that basis.

111.     Plaintiff Donges asserts that the 1099-C submitted by Defendant USAA with no accompanying or subsequent disclaimers constitutes a written promise of Defendant USAA not to undertake any efforts to collect the outstanding balance recorded in HELOC Acct No. 1055.

112.      It is recognized that Federal District Courts and the Arizona Superior Court, have held that while issuance of a Form 1099-C may be prima facie evidence of cancellation of a debt, the lender may rebut that evidence by showing that when it issued the form it did not intend to forgive the obligation.

113.     Plaintiff Donges is not asserting that the 1099-C fully extinguishes the debt recorded in HELOC Acct No. 1055 but does assert that the 1099-C submitted unaccompanied by disclaimers represents a written promise that Defendant USAA will undertake no further collection action.

114. In reliance on the promise that Defendant USAA would not pursue an action to collect the debt and free of the threat of an imminent foreclosure, Plaintiff Donges undertook several measures to preserve long term residency in the property securing the cancelled debt and to undertake several measures to improve his financial condition, such as efforts to obtain a reverse mortgage.

115. On October 4, 2017, Defendant USAA undertook its first effort to affect a collection action on HELOC Acct No 1055 when it sent a Notice of Default claiming 85 delinquent payment totaling $50,972.12, along with a demand for payment within 30 days. Subsequently, Defendant USAA filed a Notice of Trustee Sale.

116. The action of Defendant USAA to go back on its promise not to pursue further action to collect on the debt of Plaintiff Donges is an unconscionable action.

117. Therefore, injustice can be avoided only by enforcement of the promise barring Defendant USAA from further action to collect on the debt recorded in HELOC Acct N. 1055.

118. Therefore, Plaintiff Donges asks the court to issue an order barring Defendant USAA from conducting further collection activity on HELOC Acct No. 1055.

### Third Cause of Action

### Estoppel by Inaction

119. Plaintiff Donges incorporates paragraphs 1-58 herein.

120. The issue presented by this claim of Estoppel by Inaction is whether Defendant USAA's failure to respond to Plaintiff Donges legitimate dispute to Defendant USAA's Notice of Default constitutes a cause of action to such a claim.

121. Defendant USAA, through its attorneys, Tiffany and Bosco, sent a Notice of Default to Plaintiff Donges after the Statute of Limitations had run its six-year course, after Defendant USAA promised to discontinue collection efforts and which contained clearly erroneous financial information

122. Plaintiff Donges, 20 days later, sent Defendant USAA's agent, Tiffany and Bosco, a letter disputing the content of the Notice of Default.

123.     Defendant USAA's willful inaction in responding to Plaintiff Donges' dispute letter raises a sound cause of action in a claim for Estoppel by Inaction.

124.     Defendant USAA's silence in responding to the dispute can only be interpreted in favor of Plaintiff Donges' claim of a flawed Notice of Default.

125.     Therefore, Plaintiff Donges asks the Court for a finding of Estoppel by Inaction in the matter of failure to respond to Plaintiff Donges' dispute letter.

126.     Plaintiff Donges asserts that Defendant USAA's failure to provide Plaintiff Donges with an answer to his dispute letter is a violation of the Fair Credit Reporting Act with statutory remedies as the court may deem appropriate.

**Fourth Cause of Action**

**Estoppel By Misrepresentation**

127.

128.     Plaintiff Donges incorporates paragraphs 1-58 herein.

129.     The issue raised in this claim of Estoppel by Misrepresentation is whether Defendant USAA did materially misrepresent itself and the facts in a letter communicating its intent to proceed with a non-judicial trustee sale after stating that it would assume the debt described in the letter to be valid unless Plaintiff Donges, within thirty days after the receipt of this notice, disputed the validity of the debt or a portion thereof and then 12 days later before receiving Plaintiff Donges' dispute, did file its NOTICE OF TRUSTEE SALE.

130.     In both instances, the misrepresentation of Defendant USAA in its failure to provide Plaintiff Donges with 30 days to dispute the erroneous facts in the letter underlying Plaintiff USAA's claims led to considerable emotional turmoil as well as premature filing of a foreclosure action that could otherwise have been settled equitably.

131.     Plaintiff Donges asks the court for a finding of Estoppel by Misrepresentation in the instant matter.

132.     Plaintiff Donges asserts that Defendant USAA's failure to respond to his dispute letter is a violation of the Fair Credit Reporting Act with statutory remedies as the court deems appropriate.

## Fifth Cause of Action

### Quiet Title Claim

133.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

134.     This Quiet Title action seeks to quiet the title to Plaintiff Donges' Property resulting from the expiration of the Statute of Limitations on the loan agreements and the trust deeds securing those loan agreements.

135.     The Statute of Limitations, A.R.S. 12-548(A)(1) establishes a six-year limitation on the pursuit of a legal claim in a contract in writing executed in the State of Arizona.

136.     Plaintiff Donges asserts that the statute of limitations had run its course on the three HELOC Agreements executed between Plaintiff Donges and Defendant USAA thus barring any legal action to collect the debt referred to in those agreements.

137.     Plaintiff Donges further asserts that by March 31, 2017, the Statute of Limitations had run its course, thereby making any legal action against any of the three HELOC Agreements after that date as time-barred.

138.     There are currently three trust deeds recorded in the Pima County Recorder's Office securing three HELOC Agreements reflecting Defendant USAA as Beneficiary and a party named by Defendant USAA as Trustee.

139.     A.R.S. 33-816 provides that any action or sale of trust property or any action to foreclose a trust deed shall be commenced within the period prescribed by law for the commencement of an action on the contract secured by the Trust Deed.

140.     Plaintiff Donges seeks a title-clearing action through an order cancelling each of the three trust deeds currently recorded in the Pima County Recorder's Office.

141.     As stated [Fact 24] Plaintiff Donges submitted a Quit Claim Deed Form and check for $5.00 to Defendant USAA as a preparatory step to a Quiet Title action under ARS § 12-1101.

142.     Plaintiff Donges therefore seeks a declaration that the title to the subject property represented by the trust deeds held by Defendant USAA be vested in Plaintiff

Donges alone and that the Defendant USAA be declared to have no estate, right, title or interest in the subject property and that said Defendant USAA be forever enjoined from asserting any estate, right, title or interest in the subject property adverse to Plaintiff Donges.

## **RELIEF**

WHEREFORE, Plaintiff respectfully prays that this Court:

a) Issue a Declaratory Judgment ruling that the Statute of Limitations in this matter started its six-year run on or before March 31, 2011, and

b) That no actions took place from the start of the run of the Statute of Limitations until October 4, 2017 when Tiffany and Bosco issued a Notice of Default that could be adjudged as tolling the run of the Statute of Limitations, and

c) That the Statute of Limitations has therefore expired, barring Defendant USAA from seeking to collect any debt or conduct any Trustee Sale on any liens held by Defendant USAA.

d) Issue an order cancelling the Trustee Sale currently scheduled for June 25, 2018

e) Issue a Permanent Injunction barring Defendant USAA and their successors and assigns from conducting any enforcement action, collection efforts, or filing a lawsuit on Plaintiff Donges' HELOC Agreements or any judicial or non-judicial foreclosure action upon the property of Plaintiff Donges securing said HELOC agreements.

f) For such relief in the claim of Promissory Etoppel as the court may deem just and proper.

g) For such relief in the claim of Estoppel by Inaction as the court may deem just and proper.

h) For such relief in the claim of Estoppel by Misrepresentation as the court may deem just and proper.

i) Issue an Order quieting title to the property of Plaintiff Donges, free and clear of the alleged claims and liens of Defendant USAA.

j) For costs of suit herein incurred; and

k) For such other and further relief as this court may deem just and proper.

### **<u>JURY TRIAL DEMAND</u>**

In accordance with Fed. R. Civ. P. 38, Plaintiff Donges requests a jury trial on all issues in this matter.

RESPECTFULLY SUBMITTED: This 8th day of June 2018.

| By: | s/William R. Donges |
|-----|---------------------|
|     | William R. Donges, *pro se* |
| By: | *Carolyn R. Donges* |
|     | Carolyn R. Donges, *pro se* |

(Remainder of page blank)

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 8th day of June  2018, I transmitted the foregoing document to the U.S. District Court Clerk's Office by using the CM/ECF, which transmitted a Notice of Electronic Filing to:

John Spencer Craiger

Polsinelli PC Phoenix AZ

1 E Washington St., Ste 1200

Phoenix, AZ 850024

jcraiger@polisineeli.com

Lead Attorney, Attorney to be Noticed

| By: | s/William R. Donges |
| --- | --- |
| | William R. Donges, *pro se* |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28