```
USAA FEDERAL SAVINGS BANK              Loan Number ___82111055___
Home Equity Loan Servicing             Application Number   431534
10750 McDermott Freeway                 Agreement Date December 20, 2005
                        CAROLYN R. DONGES
San Antonio, TX 78288-0589
                        WILLIAM R. DONGES
Telephone: (800) 531-8065 5514 N CRESCENT RIDGE DR
                        TUCSON, AZ 85718       Credit Limit $ ___183,800.00___

                                                Maturity Date April 9, 2024
        Lender               Borrower
```

# HOME EQUITY LINE OF CREDIT AGREEMENT
## IOWA: This is a Consumer Credit Transaction

**1. DEFINITIONS.** In this Agreement, these terms have the following meanings.
   **A. Pronouns.** The pronouns "I," "me" and "my" refer to all Borrowers signing this Agreement, jointly and individually, and each other person or legal entity that agrees to pay this Agreement. "You" and "your" refer to the Lender, or any person or legal entity that acquires an interest in the Line of Credit.
   **B. Agreement.** Agreement refers to this Home Equity Line of Credit Agreement, and any extensions, renewals, modifications or substitutions of it.
   **C. Billing Cycle.** Billing Cycle means the interval between the days or dates of regular periodic statements.
   **D. Credit Limit.** Credit Limit means the maximum amount of principal you will permit me to owe under this Line of Credit, at any one time. My Credit Limit is stated at the top of this Agreement.
   **E. Line of Credit.** Line of Credit refers to this transaction generally, including obligations and duties arising from the terms of all documents prepared or submitted for this transaction such as applications, security agreements, disclosures, and this Agreement.
   **F. Loan Account Balance.** Loan Account Balance means the sum of the unpaid principal balance advanced under the terms of this Agreement, finance charges, fees, and other charges that are due, and other amounts advanced to me or others under the terms of this Line of Credit.
   **G. Property.** Property means any real or personal property that secures my obligations under this Line of Credit.

Other important terms are defined throughout this Agreement.

**2. PROMISE TO PAY.** I promise to pay to you or your order, at your address, or at such other location as you may designate, so much of the Credit Limit as may be advanced under this Agreement, plus finance charges, fees, charges, costs, and expenses as described in this Line of Credit.

**3. AGREEMENT TERM.** This Agreement begins on the Agreement Date and continues until the Maturity Date. I may request advances for ___220 Months___ (Draw Period) beginning on the Agreement Date.

**4. ADVANCES.** I may request advances by the following methods:
   A. I write a Convenience Check that you have given me for that purpose.
   B. I request a withdrawal in person, by phone, or by mail.
You will make the advance by advancing the amount directly to me, depositing it in my transaction account, or by paying a designated third person or account. You will record the amount as an advance and increase my Loan Account Balance.

**5. ADVANCE LIMITATIONS.** You do not have to make any advances during any period in which I have a right to cancel. Subject to the limitations contained in this Agreement, when I request an advance you will advance exactly the amount I request.

**6. CREDIT LIMIT.** Subject to the terms and conditions of this Agreement, I may borrow on this Line of Credit up to the Credit Limit. I agree not to request or obtain an advance that will cause the unpaid principal of my Loan Account Balance to exceed the Credit Limit. I understand that you will not ordinarily grant a request for an advance that would cause the unpaid principal of my Loan Account Balance to be greater than the Credit Limit, but that you may, at your option, grant such a request without obligating yourselves to do so in the future. My Credit Limit will not be increased if I overdraw the Line of Credit. If I exceed the Credit Limit, I agree to pay the amount by which the unpaid principal of my Loan Account Balance exceeds the Credit Limit immediately, even if you have not yet billed me. Any sums in excess of the Credit Limit will not be secured by the Property, unless they are for accrued but unpaid interest or expenditures made pursuant to the security instrument securing the Property.

**7. COMPUTATION OF FINANCE CHARGES.** Finance charges begin to accrue immediately when you make an advance to me. To figure the finance charge for each Billing Cycle, a daily periodic rate is multiplied by the Daily Balance each day. Then at the end of the Billing Cycle we add all the daily finance charge amounts for the Billing Cycle together. To figure the Daily Balance, you first take the unpaid principal balance of my account at the beginning of each day, add any new advances, and subtract any payments or credits that apply to debt repayment.

**8. PERIODIC RATE AND ANNUAL PERCENTAGE RATE.** The periodic rate used in calculating the **Finance Charge** is ___0.01849315___ % and the corresponding **Annual Percentage Rate** is ___6.75000000___ %.
The annual percentage rate includes interest and not other costs.

**9. VARIABLE RATE.** The annual percentage rate may change. It will be the value of the Index described as the highest rate on corporate loans posted by at least 75% of the USA's 30 largest banks and known as The Wall Street Journal Prime Rate, plus ___- 0.5000 %___ percentage points.
   **A. Rate Changes.** The annual percentage rate may increase if the Index rate increases. An Index rate increase will result in a higher finance charge and it may have the effect of increasing my periodic Minimum Payment. A decrease in the Index rate will have the opposite effect as an increase. An Index rate increase or decrease will take effect on the first day of the following Billing Cycle. The annual percentage rate can increase or decrease monthly after remaining fixed for ___1 day___. If the Index rate changes more frequently than the annual percentage rate, you will use the Index rate in effect on the day you adjust the annual percentage rate to determine the new annual percentage rate. In such a case, you will ignore any changes in the Index rate that occur between annual percentage rate adjustments.
   **B. Rate Change Limitations.** Annual percentage rate changes are subject to the following limitation:
      **Lifetime Cap.** The maximum **Annual Percentage Rate** that can apply during the term of this Line of Credit is 16.0% or the maximum annual percentage rate allowed by applicable law, whichever is less.

**10. FEES AND CHARGES.** I agree to pay, or have paid, the fees and charges listed in the FEES APPENDIX that appears at the end of this Agreement.

**11. PAYMENT DATE.** During the term of this Agreement, a Minimum Payment will be due on or before the Payment Date indicated on my periodic statement for any Billing Cycle in which there is an outstanding balance on my account. My Minimum Payments will be due monthly.

**12. MINIMUM PAYMENT.** On or before each Payment Date, I agree to make a payment of at least the Minimum Payment amount.
   **A. Minimum Payment Amount.** The Minimum Payment will equal the following:
      (1) ☒ **Option 1.** The amount of accrued finance charges on the last day of the Billing Cycle.
      (2) ☐ **Option 2.** 1.5 percent of the Daily Balance on the last day of the Billing Cycle or $100.00, whichever is greater.
   **B. Payment At Maturity.** On the Maturity Date I must pay the entire outstanding Loan Account Balance.

**13. PRINCIPAL REDUCTION.** Under **Option 1** the Minimum Payment will not reduce the principal balance outstanding on my Loan Account Balance. Under **Option 2** the Minimum Payment may not fully repay the principal balance outstanding on my Loan Account Balance.

**14. FINAL PAYMENT.** At maturity under **Option 1**, I will repay the entire outstanding Loan Account Balance in a single payment. At maturity under **Option 2**, I may have to repay the entire outstanding Loan Account Balance in a single payment.

At that time you may, but are not obligated to, refinance this Line of Credit. If you do refinance this Line of Credit at maturity, I understand that I may have to pay some or all of the closing costs normally associated with a new loan.

**15. ADDITIONAL PAYMENT TERMS.** If my Loan Account Balance on a Payment Date is less than the Minimum Payment amount, I must pay only the amount necessary to reduce my Loan Account Balance to zero. If I otherwise fail to fully pay the Minimum Payment amount, you may, but are not required to, advance money to me to make the payment. All the terms of this Agreement will apply to such an advance. I can pay off all or part of what I owe at any time. I must continue to make my periodic Minimum Payment so long as I owe any amount. Unless otherwise agreed or required by applicable law, payments and other credits will be applied first to any charges I owe other than principal and finance charges, then to any finance charges that are due, and finally to principal. No late charge will be assessed on any payment when the only delinquency is due to late fees assessed on earlier payments and the payment is otherwise a full payment.

**16. SECURITY.** You have secured my obligations under this Line of Credit by taking a security interest (by way of a separate security instrument dated December 20, 2005 ) in the following Property:

5514 N CRESCENT RIDGE DR
TUCSON, AZ 85718

Property securing any other loans that I have with you may also secure this Agreement.

**17. PROPERTY INSURANCE.** I will insure or retain insurance coverage on the Property and abide by the insurance requirements of any security instrument securing this Line of Credit.

**18. DEFAULT.** I will be in default if any of the following occur.
  **A. Payments.** I fail to make a payment as required by this Agreement. If the Property is located in **Iowa** I will be in default if I fail to make a payment within 10 days of its due date.
  **B. Property.** My action or inaction adversely affects the Property or your rights in the Property.
  **C. Fraud.** I engage in fraud or material misrepresentation in connection with this Line of Credit. This will not be an event of default if the Property is located in **Idaho, Iowa, Kansas, Maine, Missouri,** or **South Carolina.**

**19. REMEDIES.** After I default, and after you give any legally required notice and opportunity to cure, you may at your option do any of the following:
  **A. Termination and Acceleration.** You may terminate this Line of Credit and make all or any part of the amount owing by the terms of this Agreement immediately due.
  **B. Advances.** You may temporarily or permanently prohibit any additional advances.
  **C. Credit Limit.** You may temporarily or permanently reduce the Credit Limit.
  **D. Additional Security.** You may demand additional security or additional parties to be obligated to pay this Agreement.
  **E. Insurance Benefits.** You may make a claim for any and all insurance benefits or refunds that may be available on my default.
  **F. Payments Made On My Behalf.** You may make amounts advanced on my behalf immediately due, and you may add these amounts to the Loan Account Balance.
  **G. Sources.** You may use any and all remedies you have under applicable law or any agreement securing this Agreement.

Except as otherwise required by law, by choosing a remedy you do not give up your right to use another remedy. You do not waive a default if you choose not to use a remedy. By electing not to use any remedy you do not waive your right to later consider the event a default and to use any remedies if the default continues or occurs again.

**20. COLLECTION EXPENSES AND ATTORNEYS' FEES.** On or after default, to the extent permitted by law, I agree to pay all expenses of collection, enforcement or protection of your rights and remedies under this Agreement. All fees and expenses will be secured by the Property. Unless the Property is located in **Arkansas** or **Minnesota** these expenses are due and payable immediately, and if the expenses are not paid immediately, they will bear interest from the date of payment until paid in full at the highest rate in effect as provided for in the terms of this Agreement. Unless the Property is located in **New Hampshire,** to the extent permitted by the United States Bankruptcy Code, I agree to pay the reasonable attorneys' fees you incur to collect this debt as awarded by any court exercising jurisdiction under the Bankruptcy Code.

I agree to these additional terms, if the Property is located in the state referenced:

**Alabama or Iowa:** Expenses include, but are not limited to, court costs and other legal expenses.

**Alaska, Arizona, Michigan, Mississippi, Nebraska, New Mexico, Nevada, Oregon, Pennsylvania, Vermont, or Washington:** Expenses include, but are not limited to, attorneys' fees, court costs and other legal expenses.

**Arkansas:** Expenses include, but are not limited to, reasonable attorneys' fees (as determined under Ark. Code Ann. § 16-22-308), court costs, and other legal expenses. If not paid immediately, these expenses will bear interest from the date of payment until paid in full at the same interest rate in effect as provided in the terms of this Agreement.

**California:** Expenses are limited to the costs actually incurred for recording, mailing, publishing, and posting legally required notices, costs of postponement not to exceed $50, litigation or trustee sale fees, and attorneys' fees allowed by law.

**Colorado or South Carolina:** Expenses include, but are not limited to, reasonable attorneys' fees not in excess of 15 percent of the unpaid debt after default and referral to an attorney who is not your salaried employee.

**Connecticut:** Expenses include, but are not limited to, your reasonable attorneys' fees arising after the commencement of a lawsuit, up to 15 percent of the entered judgement so long as the fees arise from an attorney who is not your salaried employee, court costs and other legal expenses.

**District of Columbia or North Carolina:** Expenses include, but are not limited to, reasonable attorneys' fees not exceeding 15 percent of the outstanding balance of this Agreement.

**Florida:** Expenses include, but are not limited to, attorneys' fees of 10 percent of the principal sum due or a larger amount as the court judges as reasonable and just, court costs, and other legal expenses.

**Georgia:** Expenses include, but are not limited to, attorneys' fees, court costs, and other legal expenses. If this debt is collected by or through an attorney after maturity, I agree to pay 15 percent of the principal and interest owing as attorneys' fees.

**Hawaii, Massachusetts, Montana, Rhode Island, Tennessee, or Utah:** Expenses include, but are not limited to, reasonable attorneys' fees, court costs, and other legal expenses.

**Idaho, Indiana, or Wyoming:** Expenses include, but are not limited to, reasonable attorneys' fees after default and referral to an attorney who is not your salaried employee.

**Illinois:** Expenses include reasonable attorneys' fees.

**Kansas:** Expenses include, but are not limited to, collection agency fees or attorneys' fees and other court costs and legal expenses up to 15 percent of the unpaid amount due and payable if referred to someone other than a salaried employee.

**Kentucky:** Expenses include, but are not limited to, reasonable attorneys' fees as provided by law, and court costs. This amount does not include attorneys' fees for your salaried employee.

**Louisiana:** Expenses include attorneys' fees not in excess of 25 percent of the unpaid debt after default and referral to an attorney for collection.

**Maryland:** Expenses include, but are not limited to, reasonable attorneys' fees (if not paid to your salaried employee), court costs and other legal expenses.

**Maine:** Expenses include, but are not limited to, your attorneys' fees not in excess of 15 percent of the unpaid debt after referral to an attorney who is not a salaried employee of yours (unless this loan constitutes a supervised loan under the Maine Consumer Credit Code), and reasonable attorneys' fees, legal expenses and other reasonable costs incurred in realizing on the Property securing the Agreement.

**Minnesota:** Expenses include, but are not limited to, attorneys' fees, court costs and other legal expenses. If not paid immediately, these expenses will bear interest from the date of payment until paid in full at the contract interest rate in effect as provided in the terms of this Agreement.

HOME EQUITY VARIABLE DRAW AGREEMENT
Expere; © 2000 Bankers Systems, Inc., St. Cloud, MN Form USAA-HE 9/5/2003    _____ _____ _____ _____ (page 2 of 5)

**Missouri:** Expenses include, but are not limited to, attorneys' fees, not in excess of 15 percent of the amount due and payable, if referred to an attorney who is not your salaried employee, together with any assessed court costs.

**New Hampshire:** Expenses include, but are not limited to, reasonable attorneys' fees, court costs and other legal expenses. I will recover reasonable attorneys' fees if I prevail in an action brought by either of us on this Agreement. If I am partially successful in such an action, the court may withhold from you an amount for attorneys' fees considered equitable by the court. This provision also shall apply if I file a petition or other claim for relief under any bankruptcy rule or law of the United States, or if such petition or other claim for relief is filed against me by another.

**Ohio or Virginia:** Expenses include (unless prohibited by law) reasonable attorneys' fees, court costs and other legal expenses.

**Oklahoma:** Expenses include, but are not limited to, court costs, and other legal expenses. Expenses do not include attorneys' fees except as awarded by a court in accordance with other (non UCCC) statutes of Oklahoma.

**South Dakota:** Expenses include, but are not limited to, court costs and other legal expenses, including any reasonable attorneys' fees if allowed by law.

**West Virginia:** Expenses include all costs and fees authorized by law.

**21. SUSPENSION OF CREDIT AND REDUCTION OF CREDIT LIMIT.** You may temporarily prohibit me from obtaining additional advances or reduce my Credit Limit during any period in which any of the following are in effect.

  A. The value of the Property securing this Line of Credit declines significantly below its appraised value for purposes of this Line of Credit;
  B. You reasonably believe that I will not be able to meet the repayment requirements under my Line of Credit due to a material change in my financial circumstances;
  C. I am in default of a material obligation under this Line of Credit. I understand that you consider all of my obligations to be material. Categories of obligations that you consider material include, but are not limited to: my obligation to not commit fraud or misrepresentation in connection with this Line of Credit; my obligation to meet the repayment terms of this Line of Credit; my obligation to not adversely affect the Property or your rights in the Property; my obligation to pay fees and charges; my advance obligations; my obligation to fulfill the terms of the instrument securing this Agreement, and any other security instruments on the Property; my obligation to notify you; and my obligation to provide you with information;
  D. Government action prevents you from imposing the annual percentage rate provided for in this Agreement;
  E. The priority of your security interest is adversely affected by government action to the extent that the value of the security interest is less than 120 percent of my Credit Limit;
  F. The maximum annual percentage rate allowed under this Agreement is reached;
  G. You are notified by a regulatory agency that continued advances constitute an unsafe and unsound practice; or
  H. Any Borrower requests a suspension of credit privileges.

In order to reinstate my credit privileges under the original terms of this Agreement, I must send you a written request to that effect. My credit privileges will only be reinstated if you determine that the condition which caused you to prohibit additional extensions and/or reduce the Credit Limit no longer exists. If appraisal or credit report fees are incurred in making this determination, you may (if allowed by applicable law) charge me such fees. If credit privileges were suspended at my request, they need not be reinstated unless all Borrowers request reinstatement.

**22. SET-OFF.** You may set-off any amount due and payable under the terms of this Agreement against my right to receive money from you, unless prohibited by applicable law. For example, your right of set-off does not apply to an Individual Retirement Account or other tax-deferred retirement account.

**Maine:** If I am in default, you may exercise your right of set-off after you give any legally required notice and opportunity to cure.

**23. DUE ON SALE.** You may, at your option, declare the entire balance of this Agreement to be immediately due and payable upon the creation of, or the contract for the creation of, a transfer or sale of the Property. This right is subject to the restrictions imposed by federal law (12 C.F.R. Pt. 591), as applicable.

**24. AMENDMENTS.** Generally, the terms of this Agreement cannot be changed. You may, however, make the following changes:

  A. You may make changes that I agree to in writing at the time of the change.
  B. You may make changes that will unequivocally benefit me.
  C. You may make insignificant changes.
  D. You may change the Index and margin if the original Index becomes unavailable. Any new index will have an historical movement substantially similar to the original Index, and together with the new margin, produce an annual percentage rate substantially similar to the rate in effect at the time the original Index became unavailable.
  E. You may make changes that are described elsewhere in this Agreement.

**25. TERMINATION.** I may terminate this Line of Credit at any time upon written notice to you. Termination by one Borrower terminates the Line of Credit for all Borrowers. Termination will not affect my obligation to repay advances made prior to the termination, nor will it alter my duties to perform under the terms of an instrument securing this Agreement until such instrument is released. Upon termination I will return to you any remaining Convenience Checks in my possession that were issued or used in connection with the Line of Credit.

**26. WAIVERS AND CONSENT.** To the extent not prohibited by law and except for any required notice of right to cure for the failure to make a required payment, I waive protest, presentment for payment, demand, notice of acceleration, notice of intent to accelerate and notice of dishonor. To the extent not prohibited by law, I and any other party to this Line of Credit, also consent to the following actions that you may take, and waive defenses that may be available based on these actions, or based on the status of a party to this Line of Credit.

  A. You may renew or extend payments on this Agreement regardless of the number of such renewals or extensions.
  B. You may release any Borrower or other person who may be liable for the indebtedness under this Agreement.
  C. You may release, substitute or impair any Property securing this Agreement.
  D. You may invoke your right of set-off.
  E. You may enter into any sales or repurchases of this Agreement to any person in any amounts and I waive notice of such sales or repurchases.
  F. I agree that any Borrower is authorized to modify the terms of this Agreement or any other Line of Credit document.
  G. You may inform any party who guarantees this Line of Credit of any loan accommodations, renewals, extensions, modifications, substitutions, or future advances.
  H. **Georgia:** If the Property is located in Georgia, I waive my right to the benefit of exemption as to my Property securing, or to secure, this Agreement.
  I. **Indiana:** If the Property is located in Indiana, I give up any rights I may have under any valuation and appraisement laws which apply to me.

No delay or forbearance on your part in exercising any of your rights or remedies will be construed as a waiver by you, unless such waiver is in writing and is signed by you.

**27. TAX DEDUCTIBILITY.** I should consult a tax advisor regarding the deductibility of interest and charges under this Line of Credit.

**28. PERIODIC STATEMENTS.** If I have an outstanding balance on my account or have any account activity, you will send me a periodic statement at the end of each Billing Cycle. This periodic statement will reflect, among other things, credit advances, finance charges, other charges, payments made, other credits, my previous account balance and my new account balance. The periodic statement will also identify my Minimum Payment for the cycle and the date it is due (Payment Date).

**29. JOINT AND INDIVIDUAL LIABILITY AND SUCCESSORS.** My obligation to pay this Line of Credit is independent of the obligation of any other person who has also agreed to pay it. You may sue me alone, or anyone else who is obligated on this Line of Credit, or any number of us together, to collect on this Line of Credit. Extending this Line of Credit or new obligations under this Line of Credit, will not affect my duty under this Line of Credit and I will still be obligated to pay this Line of Credit. The duties and benefits of this Line of Credit will bind and benefit the successors and assigns of you and me.

**30. INTEGRATION AND SEVERABILITY.** This Agreement is the complete and final expression of the agreement. If any provision of this Agreement is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable.

**31. INTERPRETATION.** Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Agreement.

**32. NOTICE, FINANCIAL REPORTS, AND ADDITIONAL DOCUMENTS.** Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address above, or to any other address designated in writing. Notice to one Borrower will be deemed to be notice to all Borrowers. I will inform you in writing of any change in my name, address or other application information. I will provide you any financial statement or information you request. All financial statements and information I give you will be correct and complete. I agree to sign, deliver, and file any additional documents or certifications that you may consider necessary to perfect, continue, and preserve my obligations under this Line of Credit and to confirm your lien status on any Property. Time is of the essence.

**33. CREDIT INFORMATION.** I agree to supply you with whatever information you reasonably feel you need to decide whether to continue this Line of Credit. You will make requests for this information without undue frequency, and will give me reasonable time in which to supply the information.

**California:** If the Property is located in California, as required by law, I am hereby notified that a negative credit report reflecting on my credit record may be submitted to a credit reporting agency if I fail to fulfill the terms of my credit obligations.

**Utah:** Notice of Negative Credit Report. As required by Utah law, I am hereby notified that a negative credit report reflecting on my credit record may be submitted to a credit reporting agency if I fail to fulfill the terms of my credit obligations.

**34. APPLICABLE LAW.** You are a federal savings bank located in Texas. This Agreement's interest rate and related charges are made pursuant to, and governed by, the laws of Texas and the United States of America. The law of the state where the Property is located will apply to the extent legally required.

State specific text applies to the extent specifically provided above, if the Property is located in the specific jurisdiction referenced.

**Maryland:** I agree that this Line of Credit is subject to the Revolving Credit Provisions of Maryland law, as amended (Md. Commercial Law II Code Ann., Title 12, Subtitle 9).

**35. STATE NOTICES.** The following provisions apply to the extent the Property is located in the state referenced:

**Alaska:** I am personally obligated and fully liable for the amount due under this Agreement. You have the right to sue on the Agreement and obtain a personal judgment against me for satisfaction of the amount due under the Agreement either before or after a judicial foreclosure of the mortgage or deed of trust under Alaska Statutes §§ 09.45.170 through 09.45.220.

**Maryland:** If the entire Credit Limit is not disbursed at this Agreement's execution, I may, at my option, pay Maryland recordation tax on the entire Credit Limit at closing, or I may pay Maryland recordation tax on any initial advance at closing, and on any future advance at the time of each such advance. If I pay the Maryland recordation tax on the entire Credit Limit at closing, my total tax liability will be satisfied, regardless of the amount of any future advances that may subsequently be made by you to me. If, however, I elect to pay the required Maryland recordation tax as advances are made, I will have seven (7) days to file with the clerk of the court where the security instrument is recorded a verified statement of the amount of the additional debt incurred as each advance is made, and I must pay the applicable Maryland recordation tax on that additional debt, or I may be penalized by a fine of up to $500.00 or imprisonment for up to 6 months for failing to do so as provided in §14-1012 of the Tax-Property Article of the Annotated Code of Maryland.

**Missouri:** ORAL AGREEMENTS OR COMMITMENTS TO LOAN MONEY, EXTEND CREDIT OR TO FORBEAR FROM ENFORCING REPAYMENT OF A DEBT INCLUDING PROMISES TO EXTEND OR RENEW SUCH DEBT ARE NOT ENFORCEABLE. TO PROTECT YOU (BORROWER) AND US (LENDER) FROM MISUNDERSTANDING OR DISAPPOINTMENT, ANY AGREEMENTS WE REACH COVERING SUCH MATTERS ARE CONTAINED IN THIS WRITING, WHICH IS THE COMPLETE AND EXCLUSIVE STATEMENT OF THE AGREEMENT BETWEEN US, EXCEPT AS WE MAY LATER AGREE IN WRITING TO MODIFY IT.

**North Dakota:** IF PERMITTED BY APPLICABLE LAW, THIS OBLIGATION MAY BE THE BASIS FOR A PERSONAL ACTION AGAINST THE PROMISOR OR PROMISORS IN ADDITION TO OTHER REMEDIES ALLOWED BY LAW.

**Pennsylvania:** NOTICE TO BORROWER: THIS DOCUMENT CONTAINS PROVISIONS FOR A VARIABLE INTEREST RATE.

**IOWA:** Important: Read before signing. The terms of this Agreement should be read carefully because only those terms in writing are enforceable. No other terms or oral promises not contained in this written contract may be legally enforced. You may change the terms of this Agreement only by another written agreement.

**36. OTHER TERMS.** If checked, the following addenda are attached to and made a part of this Agreement:

A. ☐ Automatic Withdrawal
B. ☐ Credit Insurance
C. ☐ Discounted Rate
D. ☐ _____

**37. ADDITIONAL TERMS.**

---

**IOWA: NOTICE TO CONSUMER**
(For purposes of this Notice, "You" means Mortgagor)
1. Do not sign this paper before you read it. 2. You are entitled to a copy of this paper. 3. You may prepay the unpaid balance at any time without penalty and may be entitled to receive a refund of unearned charges in accordance with law. 4. If you prepay the unpaid balance, you may have to pay a minimum charge not greater than seven dollars and fifty cents.

---

**SIGNATURES.** I understand that terms following a ☐ only apply if checked. By signing, I agree to the terms of this Agreement and acknowledge receipt of a copy of this Agreement.
BORROWER:

X _____  X _____  X _____
CAROLYN R. DONGES            WILLIAM R. DONGES

X _____  X _____  X _____

## YOUR BILLING RIGHTS
## KEEP THIS NOTICE FOR FUTURE USE

This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

### Notify Us In Case of Errors or Questions About Your Bill

If you think your bill is wrong, or if you need more information about a transaction on your bill, write us at the address listed on your bill. Write to us as soon as possible. We must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information: (a) Your name and account number, (b) The dollar amount of the suspected error, (c) Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

If you have authorized us to pay your bill automatically from your savings, checking or other account, you can stop the payment on any amount you think is wrong. To stop the payment your letter must reach us three business days before the automatic payment is scheduled to occur.

### Your Rights and Our Responsibilities After We Receive Your Written Notice

We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe the bill was correct.

After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your Credit Limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question.

If we find that we made a mistake on your bill, you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date that it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within ten days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is.

If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your bill was correct.

---

## FEES APPENDIX

**ADDITIONAL FINANCE CHARGES.** I agree to pay, or have paid, the following **ADDITIONAL FINANCE CHARGES:**
- ☐ Origination Fee. An origination fee of _____ .
- ☐ Points. _____ .

**OTHER FEES AND CHARGES.** I agree to pay, or have paid, the following additional fees and charges:
- ☒ Recording Fee.           $ _____11.00 POC_____ .
- ☐ Appraisal Fee.           $ _____ .
- ☐ Title Search Fee.        $ _____ .
- ☐ Taxes.                   $ _____0.00_____ .
- ☐ Title Insurance.         $ _____ .
- ☐ Annual Fee. A fee of     $ _____ due annually in order to continue this Line of Credit. You will add this amount to my Loan Account Balance _____ .
- ☒ Returned Check Charge. A charge not to exceed $ _15.00_____ for each check or negotiable order of withdrawal I issue in connection with this Line of Credit that is returned because it has been dishonored.
- ☐ Flood Determination Fee. $ _____ .
- ☐ _____ .
- ☐ _____ .
- ☐ _____ .
- ☐ _____ .
- ☐ _____ .

HOME EQUITY VARIABLE DRAW AGREEMENT
Experi. © 2000 Bankers Systems, Inc., St. Cloud, MN Form USAA-HE 9/5/2003                                                          (page 5 of 5)

# ADDENDUM TO HOME EQUITY LINE OF CREDIT AGREEMENT

### Dated December 20, 2005

This Addendum to Home Equity Line of Credit Agreement (the "Addendum") is incorporated into and amends and supplements the Home Equity Line of Credit Agreement/Texas Home Equity Line of Credit/Equity Line of Credit Agreement and Disclosure dated **December 20, 2005** between USAA Federal Savings Bank and **CAROLYN R. DONGES and WILLIAM R. DONGES** evidencing a home equity mortgage loan to **CAROLYN R. DONGES and WILLIAM R. DONGES** (the "Credit Agreement"). Terms defined in the Credit Agreement shall have the same meaning in this Addendum unless expressly stated to the contrary. Notwithstanding any contrary language in the Credit Agreement, the following terms shall apply.

Upon my request and at my option, and with your consent, I may convert all or a portion of my Loan Account Balance to a segment within my Loan Account Balance (a "Fixed Segment") that will bear a fixed rate of interest for a certain period of time and require me to repay it at a fixed monthly payment in addition to my Minimum Payment (my "Fixed Segment Payment"; the sum of my Minimum Payment and my Fixed Segment Payment being my "Total Payment"). I may choose the length of the Fixed Segment as a certain number of months, subject to a minimum length of twelve months and a maximum length of 180 months, and the maturity date of any Fixed Segment may not extend beyond the Maturity Date of my Credit Agreement. You will determine the fixed rate of interest for a particular Fixed Segment as the value of the Index on the date of my request plus a margin in accordance with the following schedule:

| Length of Fixed Segment | Margin |
| --- | --- |
| 12 months to 36 months | 3.50 percentage points |
| 37 months to 48 months | 3.75 percentage points |
| 49 months to 60 months | 4.00 percentage points |
| 61 months to 72 months | 4.25 percentage points |
| 73 months to 180 months | 4.50 percentage points |

The Index for the Fixed Segment will be the Three-year Treasury Weekly Average Annualized Interest Rate as published in the Wall Street Journal Key Interest Rate section on the third Tuesday of the month previous to my request or the third Wednesday of the month previous to my request if the third Tuesday follows a Federal Reserve Board Monday holiday. However, from time to time you may offer lower rates or other features.

The minimum amount that I can convert is $4,000. I may not obtain more than five Fixed Segments in any year, and I may not have more than five Fixed Segments outstanding on my Loan Account Balance at any one time. Once I have established a particular Fixed Segment, I cannot add subsequent converted amounts to it. The aggregate principal amount of all Fixed Segments and my remaining Loan Account Balance outstanding at any time during the term of my Line of Credit will not exceed my Credit Limit.

Payments on any Fixed Segment will be due monthly as part of my Total Payment, and repayment of each Fixed Segment must occur by the maturity date of the applicable Fixed Segment. The amount of each monthly Fixed Segment Payment will be based on an amortization of the amount of the Fixed Segment over the number of months of the Fixed Segment's length, which you will set in accordance with my instructions, subject to the limitations described herein. The Total Payment due on my account will be the sum of the Fixed Segment Payment(s) and the required Minimum Payment on the variable rate credit line portion of my Loan Account Balance (my "Line Balance"), if any, as indicated on my periodic statement.

If I have established one or more Fixed Segments, each Total Payment I make will be allocated first to my required Minimum Payment due on my Line Balance, if any, then to payments due on all Fixed Segments in the order of age of the Fixed Segments, with the oldest Fixed Segment first. Unless otherwise required by applicable law, each payment I make will be applied within each Fixed Segment and within the remainder of my Loan Account Balance first to any charges (other than late charges) I owe other than principal and interest, then to interest that is due and finally to principal. Late charges will not be deducted from my Total Payment, but will be collected separately. If I remit an amount in excess of the required Total Payment for any month, the excess will be allocated first to any late charges owing, then to the Line Balance, if any, then to the principal balances of the Fixed Segments in the order of age of the Fixed Segments, with the oldest Fixed Segment first.

I may direct you in writing to allocate the excess amount to one or more specified Fixed Segments if you receive my direction no later than the day you receive my payment amount. My Total Payment for the succeeding month will not be delayed because of any excess payment. As and when the amounts I pay are allocated to the principal balance of any Fixed Segment, the available credit on my variable rate credit line will increase in an equivalent amount, not to exceed the Credit Limit.

<u>Lines of Credit Secured by Texas Properties.</u> Notwithstanding the foregoing, **if my Credit Agreement is a Texas Home Equity Line of Credit,** I may only obtain a Fixed Segment conversion during my Draw Period, and the maturity date of any Fixed Segment will not extend beyond the expiration of the Draw Period.

I will contact you by telephone or in writing to request a Fixed Segment or accept a promotional offer for a Fixed Segment. I agree that the confirmation notice noting the terms of my Fixed Segment that you mail me following your receipt of my Request will constitute the controlling record of my Request and of our agreement for the Fixed Segment.

Except to the extent that this Addendum modifies the terms of the Credit Agreement, all terms of the Credit Agreement and the Mortgage/Deed of Trust/Deed to Secure Debt ("Security Instrument") are ratified and confirmed and shall remain in full force and effect. The Security Instrument will continue to secure each Fixed Segment and the Line Balance as each exists from time to time, and in the event of default, you may exercise your rights as described in the Security Instrument against any and all Fixed Segments and the Line Balance. To the extent of any conflict between the Credit Agreement and this Addendum, this Addendum controls.

| | | | |
|---|---|---|---|
| **CAROLYN R. DONGES** | Date | **WILLIAM R. DONGES** | Date |

| USAA FEDERAL SAVINGS BANK | | Loan Number | 82111055 |
|---|---|---|---|
| Home Equity Loan Servicing | CAROLYN R. DONGES | Application Number | 431534 |
| 10750 McDermott Freeway | WILLIAM R. DONGES | Agreement Date | December 20, 2005 |
| San Antonio, TX 78288-0589 | 5514 N CRESCENT RIDGE DR | | |
| Telephone: (800) 531-8065 | TUCSON, AZ 85718 | Credit Limit $ | 183,800.00 |
| Lender | Borrower | Maturity Date | April 9, 2024 |

# HOME EQUITY LINE OF CREDIT AGREEMENT
## IOWA: This is a Consumer Credit Transaction

1. **DEFINITIONS.** In this Agreement, these terms have the following meanings.
   A. **Pronouns.** The pronouns "I," "me" and "my" refer to all Borrowers signing this Agreement, jointly and individually, and each other person or legal entity that agrees to pay this Agreement. "You" and "your" refer to the Lender, or any person or legal entity that acquires an interest in the Line of Credit.
   B. **Agreement.** Agreement refers to this Home Equity Line of Credit Agreement, and any extensions, renewals, modifications or substitutions of it.
   C. **Billing Cycle.** Billing Cycle means the interval between the days or dates of regular periodic statements.
   D. **Credit Limit.** Credit Limit means the maximum amount of principal you will permit me to owe you under this Line of Credit, at any one time. My Credit Limit is stated at the top of this Agreement.
   E. **Line of Credit.** Line of Credit refers to this transaction generally, including obligations and duties arising from the terms of all documents prepared or submitted for this transaction such as applications, security agreements, disclosures, and this Agreement.
   F. **Loan Account Balance.** Loan Account Balance means the sum of the unpaid principal balance advanced under the terms of this Agreement, finance charges, fees, and other charges that are due, and other amounts advanced to me or others under the terms of this Line of Credit.
   G. **Property.** Property means any real or personal property that secures my obligations under this Line of Credit.

Other important terms are defined throughout this Agreement.

2. **PROMISE TO PAY.** I promise to pay to you or your order, at your address, or at such other location as you may designate, so much of the Credit Limit as may be advanced under this Agreement, plus finance charges, fees, charges, costs, and expenses as described in this Line of Credit.

3. **AGREEMENT TERM.** This Agreement begins on the Agreement Date and continues until the Maturity Date. I may request advances for ___220 Months___ (Draw Period) beginning on the Agreement Date.

4. **ADVANCES.** I may request advances by the following methods:
   A. I write a Convenience Check that you have given me for that purpose.
   B. I request a withdrawal in person, by phone, or by mail.
You will make the advance by advancing the amount directly to me, depositing it in my transaction account, or by paying a designated third person or account. You will record the amount as an advance and increase my Loan Account Balance.

5. **ADVANCE LIMITATIONS.** You do not have to make any advances during any period in which I have a right to cancel. Subject to the limitations contained in this Agreement, when I request an advance you will advance exactly the amount I request.

6. **CREDIT LIMIT.** Subject to the terms and conditions of this Agreement, I may borrow on this Line of Credit up to the Credit Limit. I agree not to request or obtain an advance that will cause the unpaid principal of my Loan Account Balance to exceed the Credit Limit. I understand that you will not ordinarily grant a request for an advance that would cause the unpaid principal of my Loan Account Balance to be greater than the Credit Limit, but that you may, at your option, grant such a request without obligating yourselves to do so in the future. My Credit Limit will not be increased if I overdraw the Line of Credit. If I exceed the Credit Limit, I agree to pay the amount by which the unpaid principal of my Loan Account Balance exceeds the Credit Limit immediately, even if you have not yet billed me. Any sums in excess of the Credit Limit will not be secured by the Property, unless they are for accrued but unpaid interest or expenditures made pursuant to the security instrument securing the Property.

7. **COMPUTATION OF FINANCE CHARGES.** Finance charges begin to accrue immediately when you make an advance to me. To figure the finance charge for each Billing Cycle, a daily periodic rate is multiplied by the Daily Balance each day. Then at the end of the Billing Cycle we add all the daily finance charge amounts for the Billing Cycle together. To figure the Daily Balance, you first take the unpaid principal balance of my account at the beginning of each day, add any new advances, and subtract any payments or credits that apply to debt repayment.

8. **PERIODIC RATE AND ANNUAL PERCENTAGE RATE.** The periodic rate used in calculating the **Finance Charge** is ___0.01849315___ % and the corresponding **Annual Percentage Rate** is ___6.75000000___ %. The annual percentage rate includes interest and not other costs.

9. **VARIABLE RATE.** The annual percentage rate may change. It will be the value of the Index described as the highest rate on corporate loans posted by at least 75% of the USA's 30 largest banks and known as The Wall Street Journal Prime Rate, plus ___- 0.5000 %___ percentage points.
   A. **Rate Changes.** The annual percentage rate may increase if the Index rate increases. An Index rate increase will result in a higher finance charge and it may have the effect of increasing my periodic Minimum Payment. A decrease in the Index rate will have the opposite effect as an increase. An Index rate increase or decrease will take effect on the first day of the following Billing Cycle. The annual percentage rate can increase or decrease monthly after remaining fixed for ___1 day___. If the Index rate changes more frequently than the annual percentage rate, you will use the Index rate in effect on the day you adjust the annual percentage rate to determine the new annual percentage rate. In such a case, you will ignore any changes in the Index rate that occur between annual percentage rate adjustments.
   B. **Rate Change Limitations.** Annual percentage rate changes are subject to the following limitation:
      **Lifetime Cap.** The maximum **Annual Percentage Rate** that can apply during the term of this Line of Credit is 16.0% or the maximum annual percentage rate allowed by applicable law, whichever is less.

10. **FEES AND CHARGES.** I agree to pay, or have paid, the fees and charges listed in the FEES APPENDIX that appears at the end of this Agreement.

11. **PAYMENT DATE.** During the term of this Agreement, a Minimum Payment will be due on or before the Payment Date indicated on my periodic statement for any Billing Cycle in which there is an outstanding balance on my account. My Minimum Payments will be due monthly.

12. **MINIMUM PAYMENT.** On or before each Payment Date, I agree to make a payment of at least the Minimum Payment amount.
    A. **Minimum Payment Amount.** The Minimum Payment will equal the following:
       (1) ☒ **Option 1.** The amount of accrued finance charges on the last day of the Billing Cycle.
       (2) ☐ **Option 2.** 1.5 percent of the Daily Balance on the last day of the Billing Cycle or $100.00, whichever is greater.
    B. **Payment At Maturity.** On the Maturity Date I must pay the entire outstanding Loan Account Balance.

13. **PRINCIPAL REDUCTION.** Under **Option 1** the Minimum Payment will not reduce the principal balance outstanding on my Loan Account Balance. Under **Option 2** the Minimum Payment may not fully repay the principal balance outstanding on my Loan Account Balance.

14. **FINAL PAYMENT.** At maturity under **Option 1**, I will repay the entire outstanding Loan Account Balance in a single payment. At maturity under **Option 2**, I may have to repay the entire outstanding Loan Account Balance in a single payment.

HOME EQUITY VARIABLE DRAW AGREEMENT
Experity © 2000 Bankers Systems, Inc., St. Cloud, MN Form USAA-HE 9/5/2003

(page 1 of 5)

At that time you may, but are not obligated to, refinance this Line of Credit. If you do refinance this Line of Credit at maturity, I understand that I may have to pay some or all of the closing costs normally associated with a new loan.

**15. ADDITIONAL PAYMENT TERMS.** If my Loan Account Balance on a Payment Date is less than the Minimum Payment amount, I must pay only the amount necessary to reduce my Loan Account Balance to zero. If I otherwise fail to fully pay the Minimum Payment amount, you may, but are not required to, advance money to me to make the payment. All the terms of this Agreement will apply to such an advance. I can pay off all or part of what I owe at any time. I must continue to make my periodic Minimum Payment so long as I owe any amount. Unless otherwise agreed or required by applicable law, payments and other credits will be applied first to any charges I owe other than principal and finance charges, then to any finance charges that are due, and finally to principal. No late charge will be assessed on any payment when the only delinquency is due to late fees assessed on earlier payments and the payment is otherwise a full payment.

**16. SECURITY.** You have secured my obligations under this Line of Credit by taking a security interest (by way of a separate security instrument dated December 20, 2005 ) in the following Property:

5514 N CRESCENT RIDGE DR
TUCSON, AZ 85718

Property securing any other loans that I have with you may also secure this Agreement.

**17. PROPERTY INSURANCE.** I will insure or retain insurance coverage on the Property and abide by the insurance requirements of any security instrument securing this Line of Credit.

**18. DEFAULT.** I will be in default if any of the following occur.
  A. **Payments.** I fail to make a payment as required by this Agreement. If the Property is located in **Iowa** I will be in default if I fail to make a payment within 10 days of its due date.
  B. **Property.** My action or inaction adversely affects the Property or your rights in the Property.
  C. **Fraud.** I engage in fraud or material misrepresentation in connection with this Line of Credit. This will not be an event of default if the Property is located in **Idaho, Iowa, Kansas, Maine, Missouri,** or **South Carolina**.

**19. REMEDIES.** After I default, and after you give any legally required notice and opportunity to cure, you may at your option do any of the following:
  A. **Termination and Acceleration.** You may terminate this Line of Credit and make all or any part of the amount owing by the terms of this Agreement immediately due.
  B. **Advances.** You may temporarily or permanently prohibit any additional advances.
  C. **Credit Limit.** You may temporarily or permanently reduce the Credit Limit.
  D. **Additional Security.** You may demand additional security or additional parties to be obligated to pay this Agreement.
  E. **Insurance Benefits.** You may make a claim for any and all insurance benefits or refunds that may be available on my default.
  F. **Payments Made On My Behalf.** You may make amounts advanced on my behalf immediately due, and you may add these amounts to the Loan Account Balance.
  G. **Sources.** You may use any and all remedies you have under applicable law or any agreement securing this Agreement.

Except as otherwise required by law, by choosing a remedy you do not give up your right to use another remedy. You do not waive a default if you choose not to use a remedy. By electing not to use any remedy you do not waive your right to later consider the event a default and to use any remedies if the default continues or occurs again.

**20. COLLECTION EXPENSES AND ATTORNEYS' FEES.** On or after default, to the extent permitted by law, I agree to pay all expenses of collection, enforcement or protection of your rights and remedies under this Agreement. All fees and expenses will be secured by the Property. Unless the Property is located in **Arkansas** or **Minnesota** these expenses are due and payable immediately, and if the expenses are not paid immediately, they will bear interest from the date of payment until paid in full at the highest rate in effect as provided for in the terms of this Agreement. Unless the Property is located in **New Hampshire**, to the extent permitted by the United States Bankruptcy Code, I agree to pay the reasonable attorneys' fees you incur to collect this debt as awarded by any court exercising jurisdiction under the Bankruptcy Code.

I agree to these additional terms, if the Property is located in the state referenced:

**Alabama or Iowa:** Expenses include, but are not limited to, court costs and other legal expenses.

**Alaska, Arizona, Michigan, Mississippi, Nebraska, New Mexico, Nevada, Oregon, Pennsylvania, Vermont,** or **Washington:** Expenses include, but are not limited to, attorneys' fees, court costs and other legal expenses.

**Arkansas:** Expenses include, but are not limited to, reasonable attorneys' fees (as determined under Ark. Code Ann. § 16-22-308), court costs, and other legal expenses. If not paid immediately, these expenses will bear interest from the date of payment until paid in full at the same interest rate in effect as provided in the terms of this Agreement.

**California:** Expenses are limited to the costs actually incurred for recording, mailing, publishing, and posting legally required notices, costs of postponement not to exceed $50, litigation or trustee sale fees, and attorneys' fees allowed by law.

**Colorado or South Carolina:** Expenses include, but are not limited to, reasonable attorneys' fees not in excess of 15 percent of the unpaid debt after default and referral to an attorney who is not your salaried employee.

**Connecticut:** Expenses include, but are not limited to, your reasonable attorneys' fees arising after the commencement of a lawsuit, up to 15 percent of the entered judgement so long as the fees arise from an attorney who is not your salaried employee, court costs and other legal expenses.

**District of Columbia or North Carolina:** Expenses include, but are not limited to, reasonable attorneys' fees not exceeding 15 percent of the outstanding balance of this Agreement.

**Florida:** Expenses include, but are not limited to, attorneys' fees of 10 percent of the principal sum due or a larger amount as the court judges as reasonable and just, court costs, and other legal expenses.

**Georgia:** Expenses include, but are not limited to, attorneys' fees, court costs, and other legal expenses. If this debt is collected by or through an attorney after maturity, I agree to pay 15 percent of the principal and interest owing as attorneys' fees.

**Hawaii, Massachusetts, Montana, Rhode Island, Tennessee,** or **Utah:** Expenses include, but are not limited to, reasonable attorneys' fees, court costs, and other legal expenses.

**Idaho, Indiana,** or **Wyoming:** Expenses include, but are not limited to, reasonable attorneys' fees after default and referral to an attorney who is not your salaried employee.

**Illinois:** Expenses include reasonable attorneys' fees.

**Kansas:** Expenses include, but are not limited to, collection agency fees or attorneys' fees and other court costs and legal expenses up to 15 percent of the unpaid amount due and payable if referred to someone other than a salaried employee.

**Kentucky:** Expenses include, but are not limited to, reasonable attorneys' fees as provided by law, and court costs. This amount does not include attorneys' fees for your salaried employee.

**Louisiana:** Expenses include attorneys' fees not in excess of 25 percent of the unpaid debt after default and referral to an attorney for collection.

**Maryland:** Expenses include, but are not limited to, reasonable attorneys' fees (if not paid to your salaried employee), court costs and other legal expenses.

**Maine:** Expenses include, but are not limited to, your attorneys' fees not in excess of 15 percent of the unpaid debt after referral to an attorney who is not a salaried employee of yours (unless this loan constitutes a supervised loan under the Maine Consumer Credit Code), and reasonable attorneys' fees, legal expenses and other reasonable costs incurred in realizing on the Property securing the Agreement.

**Minnesota:** Expenses include, but are not limited to, attorneys' fees, court costs and other legal expenses. If not paid immediately, these expenses will bear interest from the date of payment until paid in full at the contract interest rate in effect as provided in the terms of this Agreement.

**Missouri:** Expenses include, but are not limited to, attorneys' fees, not in excess of 15 percent of the amount due and payable, if referred to an attorney who is not your salaried employee, together with any assessed court costs.

**New Hampshire:** Expenses include, but are not limited to, reasonable attorneys' fees, court costs and other legal expenses. I will recover reasonable attorneys' fees if I prevail in an action brought by either of us on this Agreement. If I am partially successful in such an action, the court may withhold from you an amount for attorneys' fees considered equitable by the court. This provision also shall apply if I file a petition or other claim for relief under any bankruptcy rule or law of the United States, or if such petition or other claim for relief is filed against me by another.

**Ohio or Virginia:** Expenses include (unless prohibited by law) reasonable attorneys' fees, court costs and other legal expenses.

**Oklahoma:** Expenses include, but are not limited to, court costs, and other legal expenses. Expenses do not include attorneys' fees except as awarded by a court in accordance with other (non UCCC) statutes of Oklahoma.

**South Dakota:** Expenses include, but are not limited to, court costs and other legal expenses, including any reasonable attorneys' fees if allowed by law.

**West Virginia:** Expenses include all costs and fees authorized by law.

**21. SUSPENSION OF CREDIT AND REDUCTION OF CREDIT LIMIT.** You may temporarily prohibit me from obtaining additional advances or reduce my Credit Limit during any period in which any of the following are in effect.

    A. The value of the Property securing this Line of Credit declines significantly below its appraised value for purposes of this Line of Credit;
    B. You reasonably believe that I will not be able to meet the repayment requirements under my Line of Credit due to a material change in my financial circumstances;
    C. I am in default of a material obligation under this Line of Credit. I understand that you consider all of my obligations to be material. Categories of obligations that you consider material include, but are not limited to: my obligation to not commit fraud or misrepresentation in connection with this Line of Credit; my obligation to meet the repayment terms of this Line of Credit; my obligation to not adversely affect the Property or your rights in the Property; my obligation to pay fees and charges; my advance obligations; my obligation to fulfill the terms of the instrument securing this Agreement, and any other security instruments on the Property; my obligation to notify you; and my obligation to provide you with information;
    D. Government action prevents you from imposing the annual percentage rate provided for in this Agreement;
    E. The priority of your security interest is adversely affected by government action to the extent that the value of the security interest is less than 120 percent of my Credit Limit;
    F. The maximum annual percentage rate allowed under this Agreement is reached;
    G. You are notified by a regulatory agency that continued advances constitute an unsafe and unsound practice; or
    H. Any Borrower requests a suspension of credit privileges.

In order to reinstate my credit privileges under the original terms of this Agreement, I must send you a written request to that effect. My credit privileges will only be reinstated if you determine that the condition which caused you to prohibit additional extensions and/or reduce the Credit Limit no longer exists. If appraisal or credit report fees are incurred in making this determination, you may (if allowed by applicable law) charge me such fees. If credit privileges were suspended at my request, they need not be reinstated unless all Borrowers request reinstatement.

**22. SET-OFF.** You may set-off any amount due and payable under the terms of this Agreement against my right to receive money from you, unless prohibited by applicable law. For example, your right of set-off does not apply to an Individual Retirement Account or other tax-deferred retirement account.

**Maine:** If I am in default, you may exercise your right of set-off after you give any legally required notice and opportunity to cure.

**23. DUE ON SALE.** You may, at your option, declare the entire balance of this Agreement to be immediately due and payable upon the creation of, or the contract for the creation of, a transfer or sale of the Property. This right is subject to the restrictions imposed by federal law (12 C.F.R. Pt. 591), as applicable.

**24. AMENDMENTS.** Generally, the terms of this Agreement cannot be changed. You may, however, make the following changes:

    A. You may make changes that I agree to in writing at the time of the change.
    B. You may make changes that will unequivocally benefit me.
    C. You may make insignificant changes.
    D. You may change the Index and margin if the original Index becomes unavailable. Any new index will have an historical movement substantially similar to the original Index, and together with the new margin, produce an annual percentage rate substantially similar to the rate in effect at the time the original Index became unavailable.
    E. You may make changes that are described elsewhere in this Agreement.

**25. TERMINATION.** I may terminate this Line of Credit at any time upon written notice to you. Termination by one Borrower terminates the Line of Credit for all Borrowers. Termination will not affect my obligation to repay advances made prior to the termination, nor will it alter my duties to perform under the terms of an instrument securing this Agreement until such instrument is released. Upon termination I will return to you any remaining Convenience Checks in my possession that were issued or used in connection with the Line of Credit.

**26. WAIVERS AND CONSENT.** To the extent not prohibited by law and except for any required notice of right to cure for the failure to make a required payment, I waive protest, presentment for payment, demand, notice of acceleration, notice of intent to accelerate and notice of dishonor. To the extent not prohibited by law, I and any other party to this Line of Credit, also consent to the following actions that you may take, and waive defenses that may be available based on these actions, or based on the status of a party to this Line of Credit.

    A. You may renew or extend payments on this Agreement regardless of the number of such renewals or extensions.
    B. You may release any Borrower or other person who may be liable for the indebtedness under this Agreement.
    C. You may release, substitute or impair any Property securing this Agreement.
    D. You may invoke your right of set-off.
    E. You may enter into any sales or repurchases of this Agreement to any person in any amounts and I waive notice of such sales or repurchases.
    F. I agree that any Borrower is authorized to modify the terms of this Agreement or any other Line of Credit document.
    G. You may inform any party who guarantees this Line of Credit of any loan accommodations, renewals, extensions, modifications, substitutions, or future advances.
    H. **Georgia:** If the Property is located in Georgia, I waive my right to the benefit of exemption as to my Property securing, or to secure, this Agreement.
    I. **Indiana:** If the Property is located in Indiana, I give up any rights I may have under any valuation and appraisement laws which apply to me.

No delay or forbearance on your part in exercising any of your rights or remedies will be construed as a waiver by you, unless such waiver is in writing and is signed by you.

**27. TAX DEDUCTIBILITY.** I should consult a tax advisor regarding the deductibility of interest and charges under this Line of Credit.

**28. PERIODIC STATEMENTS.** If I have an outstanding balance on my account or have any account activity, you will send me a periodic statement at the end of each Billing Cycle. This periodic statement will reflect, among other things, credit advances, finance charges, other charges, payments made, other credits, my previous account balance and my new account balance. The periodic statement will also identify my Minimum Payment for the cycle and the date it is due (Payment Date).

**29. JOINT AND INDIVIDUAL LIABILITY AND SUCCESSORS.** My obligation to pay this Line of Credit is independent of the obligation of any other person who has also agreed to pay it. You may sue me alone, or anyone else who is obligated on this Line of Credit, or any number of us together, to collect on this Line of Credit. Extending this Line of Credit or new obligations under this Line of Credit, will not affect my duty under this Line of Credit and I will still be obligated to pay this Line of Credit. The duties and benefits of this Line of Credit will bind and benefit the successors and assigns of you and me.

**30. INTEGRATION AND SEVERABILITY.** This Agreement is the complete and final expression of the agreement. If any provision of this Agreement is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable.

**31. INTERPRETATION.** Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Agreement.

HOME EQUITY VARIABLE DRAW AGREEMENT
Expert © 2000 Bankers Systems, Inc., St. Cloud, MN Form USAA-HE 9/5/2003

(page 3 of 5)

**32. NOTICE, FINANCIAL REPORTS, AND ADDITIONAL DOCUMENTS.** Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address above, or to any other address designated in writing. Notice to one Borrower will be deemed to be notice to all Borrowers. I will inform you in writing of any change in my name, address or other application information. I will provide you any financial statement or information you request. All financial statements and information I give you will be correct and complete. I agree to sign, deliver, and file any additional documents or certifications that you may consider necessary to perfect, continue, and preserve my obligations under this Line of Credit and to confirm your lien status on any Property. Time is of the essence.

**33. CREDIT INFORMATION.** I agree to supply you with whatever information you reasonably feel you need to decide whether to continue this Line of Credit. You will make requests for this information without undue frequency, and will give me reasonable time in which to supply the information.

**California:** If the Property is located in California, as required by law, I am hereby notified that a negative credit report reflecting on my credit record may be submitted to a credit reporting agency if I fail to fulfill the terms of my credit obligations.

**Utah:** Notice of Negative Credit Report. As required by Utah law, I am hereby notified that a negative credit report reflecting on my credit record may be submitted to a credit reporting agency if I fail to fulfill the terms of my credit obligations.

**34. APPLICABLE LAW.** You are a federal savings bank located in Texas. This Agreement's interest rate and related charges are made pursuant to, and governed by, the laws of Texas and the United States of America. The law of the state where the Property is located will apply to the extent legally required.

State specific text applies to the extent specifically provided above, if the Property is located in the specific jurisdiction referenced.

**Maryland:** I agree that this Line of Credit is subject to the Revolving Credit Provisions of Maryland law, as amended (Md. Commercial Law II Code Ann., Title 12, Subtitle 9).

**35. STATE NOTICES.** The following provisions apply to the extent the Property is located in the state referenced:

**Alaska:** I am personally obligated and fully liable for the amount due under this Agreement. You have the right to sue on the Agreement and obtain a personal judgment against me for satisfaction of the amount due under the Agreement either before or after a judicial foreclosure of the mortgage or deed of trust under Alaska Statutes §§ 09.45.170 through 09.45.220.

**Maryland:** If the entire Credit Limit is not disbursed at this Agreement's execution, I may, at my option, pay Maryland recordation tax on the entire Credit Limit at closing, or I may pay Maryland recordation tax on any initial advance at closing, and on any future advance at the time of each such advance. If I pay the Maryland recordation tax on the entire Credit Limit at closing, my total tax liability will be satisfied, regardless of the amount of any future advances that may subsequently be made by you to me. If, however, I elect to pay the required Maryland recordation tax as advances are made, I will have seven (7) days to file with the clerk of the court where the security instrument is recorded a verified statement of the amount of the additional debt incurred as each advance is made, and I must pay the applicable Maryland recordation tax on that additional debt, or I may be penalized by a fine of up to $500.00 or imprisonment for up to 6 months for failing to do so as provided in §14-1012 of the Tax-Property Article of the Annotated Code of Maryland.

**Missouri:** ORAL AGREEMENTS OR COMMITMENTS TO LOAN MONEY, EXTEND CREDIT OR TO FORBEAR FROM ENFORCING REPAYMENT OF A DEBT INCLUDING PROMISES TO EXTEND OR RENEW SUCH DEBT ARE NOT ENFORCEABLE. TO PROTECT YOU (BORROWER) AND US (LENDER) FROM MISUNDERSTANDING OR DISAPPOINTMENT, ANY AGREEMENTS WE REACH COVERING SUCH MATTERS ARE CONTAINED IN THIS WRITING, WHICH IS THE COMPLETE AND EXCLUSIVE STATEMENT OF THE AGREEMENT BETWEEN US, EXCEPT AS WE MAY LATER AGREE IN WRITING TO MODIFY IT.

**North Dakota:** IF PERMITTED BY APPLICABLE LAW, THIS OBLIGATION MAY BE THE BASIS FOR A PERSONAL ACTION AGAINST THE PROMISOR OR PROMISORS IN ADDITION TO OTHER REMEDIES ALLOWED BY LAW.

**Pennsylvania:** NOTICE TO BORROWER: THIS DOCUMENT CONTAINS PROVISIONS FOR A VARIABLE INTEREST RATE.

**IOWA:** Important: Read before signing. The terms of this Agreement should be read carefully because only those terms in writing are enforceable. No other terms or oral promises not contained in this written contract may be legally enforced. You may change the terms of this Agreement only by another written agreement.

**36. OTHER TERMS.** If checked, the following addenda are attached to and made a part of this Agreement:

A. ☐ Automatic Withdrawal
B. ☐ Credit Insurance
C. ☐ Discounted Rate
D. ☐ _____

**37. ADDITIONAL TERMS.**

---

**IOWA: NOTICE TO CONSUMER**
(For purposes of this Notice, "You" means Mortgagor)
1. Do not sign this paper before you read it. 2. You are entitled to a copy of this paper. 3. You may prepay the unpaid balance at any time without penalty and may be entitled to receive a refund of unearned charges in accordance with law. 4. If you prepay the unpaid balance, you may have to pay a minimum charge not greater than seven dollars and fifty cents.

---

**SIGNATURES.** I understand that terms following a ☐ only apply if checked. By signing, I agree to the terms of this Agreement and acknowledge receipt of a copy of this Agreement.
**BORROWER:**

X _____   X _____   X _____
CAROLYN R. DONGES            WILLIAM R. DONGES

X _____   X _____   X _____

---

HOME EQUITY VARIABLE DRAW AGREEMENT
Expere © 2000 Bankers Systems, Inc., St. Cloud, MN Form USAA-HE 9/5/2003

(page 4 of 5)

# YOUR BILLING RIGHTS
## KEEP THIS NOTICE FOR FUTURE USE

This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

### Notify Us In Case of Errors or Questions About Your Bill

If you think your bill is wrong, or if you need more information about a transaction on your bill, write us at the address listed on your bill. Write to us as soon as possible. We must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information: (a) Your name and account number, (b) The dollar amount of the suspected error, (c) Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

If you have authorized us to pay your bill automatically from your savings, checking or other account, you can stop the payment on any amount you think is wrong. To stop the payment your letter must reach us three business days before the automatic payment is scheduled to occur.

### Your Rights and Our Responsibilities After We Receive Your Written Notice

We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe the bill was correct.

After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your Credit Limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question.

If we find that we made a mistake on your bill, you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date that it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within ten days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is.

If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your bill was correct.

---

# FEES APPENDIX

**ADDITIONAL FINANCE CHARGES.** I agree to pay, or have paid, the following **ADDITIONAL FINANCE CHARGES**:
- ☐ Origination Fee. An origination fee of _____
- ☐ Points. _____

**OTHER FEES AND CHARGES.** I agree to pay, or have paid, the following additional fees and charges:
- ☒ Recording Fee.          $ __11.00 POC__ .
- ☐ Appraisal Fee.          $ _____ .
- ☐ Title Search Fee.       $ _____ .
- ☐ Taxes.                  $ ____0.00____ .
- ☐ Title Insurance.        $ _____ .
- ☐ Annual Fee. A fee of    $ _____ due annually in order to continue this Line of Credit. You will add this amount to my Loan Account Balance _____.
- ☒ Returned Check Charge. A charge not to exceed $ __15.00_____ for each check or negotiable order of withdrawal I issue in connection with this Line of Credit that is returned because it has been dishonored.
- ☐ Flood Determination Fee. $ _____ .
- ☐ _____
- ☐ _____
- ☐ _____
- ☐ _____
- ☐ _____

HOME EQUITY VARIABLE DRAW AGREEMENT
Expere © 2000 Bankers Systems, Inc., St. Cloud, MN Form USAA-HE 9/5/2003          ____ ____ ____ ____    (page 5 of 5)

# ADDENDUM TO HOME EQUITY LINE OF CREDIT AGREEMENT

### Dated December 20, 2005

This Addendum to Home Equity Line of Credit Agreement (the "Addendum") is incorporated into and amends and supplements the Home Equity Line of Credit Agreement/Texas Home Equity Line of Credit/Equity Line of Credit Agreement and Disclosure dated **December 20, 2005** between USAA Federal Savings Bank and **CAROLYN R. DONGES and WILLIAM R. DONGES** evidencing a home equity mortgage loan to **CAROLYN R. DONGES and WILLIAM R. DONGES** (the "Credit Agreement"). Terms defined in the Credit Agreement shall have the same meaning in this Addendum unless expressly stated to the contrary. Notwithstanding any contrary language in the Credit Agreement, the following terms shall apply.

Upon my request and at my option, and with your consent, I may convert all or a portion of my Loan Account Balance to a segment within my Loan Account Balance (a "Fixed Segment") that will bear a fixed rate of interest for a certain period of time and require me to repay it at a fixed monthly payment in addition to my Minimum Payment (my "Fixed Segment Payment"; the sum of my Minimum Payment and my Fixed Segment Payment being my "Total Payment"). I may choose the length of the Fixed Segment as a certain number of months, subject to a minimum length of twelve months and a maximum length of 180 months, and the maturity date of any Fixed Segment may not extend beyond the Maturity Date of my Credit Agreement. You will determine the fixed rate of interest for a particular Fixed Segment as the value of the Index on the date of my request plus a margin in accordance with the following schedule:

| Length of Fixed Segment | Margin |
|---|---|
| 12 months to 36 months | 3.50 percentage points |
| 37 months to 48 months | 3.75 percentage points |
| 49 months to 60 months | 4.00 percentage points |
| 61 months to 72 months | 4.25 percentage points |
| 73 months to 180 months | 4.50 percentage points |

The Index for the Fixed Segment will be the Three-year Treasury Weekly Average Annualized Interest Rate as published in the Wall Street Journal Key Interest Rate section on the third Tuesday of the month previous to my request or the third Wednesday of the month previous to my request if the third Tuesday follows a Federal Reserve Board Monday holiday. However, from time to time you may offer lower rates or other features.

The minimum amount that I can convert is $4,000. I may not obtain more than five Fixed Segments in any year, and I may not have more than five Fixed Segments outstanding on my Loan Account Balance at any one time. Once I have established a particular Fixed Segment, I cannot add subsequent converted amounts to it. The aggregate principal amount of all Fixed Segments and my remaining Loan Account Balance outstanding at any time during the term of my Line of Credit will not exceed my Credit Limit.

Payments on any Fixed Segment will be due monthly as part of my Total Payment, and repayment of each Fixed Segment must occur by the maturity date of the applicable Fixed Segment. The amount of each monthly Fixed Segment Payment will be based on an amortization of the amount of the Fixed Segment over the number of months of the Fixed Segment's length, which you will set in accordance with my instructions, subject to the limitations described herein. The Total Payment due on my account will be the sum of the Fixed Segment Payment(s) and the required Minimum Payment on the variable rate credit line portion of my Loan Account Balance (my "Line Balance"), if any, as indicated on my periodic statement.

If I have established one or more Fixed Segments, each Total Payment I make will be allocated first to my required Minimum Payment due on my Line Balance, if any, then to payments due on all Fixed Segments in the order of age of the Fixed Segments, with the oldest Fixed Segment first. Unless otherwise required by applicable law, each payment I make will be applied within each Fixed Segment and within the remainder of my Loan Account Balance first to any charges (other than late charges) I owe other than principal and interest, then to interest that is due and finally to principal. Late charges will not be deducted from my Total Payment, but will be collected separately. If I remit an amount in excess of the required Total Payment for any month, the excess will be allocated first to any late charges owing, then to the Line Balance, if any, then to the principal balances of the Fixed Segments in the order of age of the Fixed Segments, with the oldest Fixed Segment first.

I may direct you in writing to allocate the excess amount to one or more specified Fixed Segments if you receive my direction no later than the day you receive my payment amount. My Total Payment for the succeeding month will not be delayed because of any excess payment. As and when the amounts I pay are allocated to the principal balance of any Fixed Segment, the available credit on my variable rate credit line will increase in an equivalent amount, not to exceed the Credit Limit.

Lines of Credit Secured by Texas Properties. Notwithstanding the foregoing, **if my Credit Agreement is a Texas Home Equity Line of Credit,** I may only obtain a Fixed Segment conversion during my Draw Period, and the maturity date of any Fixed Segment will not extend beyond the expiration of the Draw Period.

I will contact you by telephone or in writing to request a Fixed Segment or accept a promotional offer for a Fixed Segment. I agree that the confirmation notice noting the terms of my Fixed Segment that you mail me following your receipt of my Request will constitute the controlling record of my Request and of our agreement for the Fixed Segment.

Except to the extent that this Addendum modifies the terms of the Credit Agreement, all terms of the Credit Agreement and the Mortgage/Deed of Trust/Deed to Secure Debt ("Security Instrument") are ratified and confirmed and shall remain in full force and effect. The Security Instrument will continue to secure each Fixed Segment and the Line Balance as each exists from time to time, and in the event of default, you may exercise your rights as described in the Security Instrument against any and all Fixed Segments and the Line Balance. To the extent of any conflict between the Credit Agreement and this Addendum, this Addendum controls.

| | | | |
|---|---|---|---|
| **CAROLYN R. DONGES** | Date | **WILLIAM R. DONGES** | Date |