**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| William R Donges, et al., | No. CV-18-00093-TUC-RM |
| Plaintiffs, | **ORDER** |
| v. | |
| USAA Federal Savings Bank, | |
| Defendant. | |

Pending before the Court are Plaintiffs William and Carolyn Donges' Motion for Partial Summary Judgment (Doc. 54) and Defendant USAA Federal Savings Bank's Motion for Summary Judgment (Doc. 64).[1] The summary judgment motions are fully briefed and suitable for determination without oral argument. For the following reasons, summary judgment will be granted in favor of Defendant.

## I. Standard of Review

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is genuine if the evidence is such that a reasonable trier of fact could resolve the dispute in favor of the nonmoving party. *Id.* In evaluating a motion for summary judgment,

---

[1] Also pending are Plaintiffs' Requests for Judicial Notice (Docs. 74, 75). They ask the Court to take notice of the "Great Recession," the "Banking Crises," the "Mortgage Crises," and certain statutes, regulations, and agency guidelines. Their requests are granted.

the court must "draw all reasonable inferences from the evidence" in favor of the non-movant. *O'Connor v. Boeing N. Am., Inc.*, 311 F.3d 1139, 1150 (9th Cir. 2002). A reasonable inference is one which is supported by "significant probative evidence" rather than "threadbare conclusory statements." *Barnes v. Arden Mayfair, Inc.*, 759 F.2d 676, 680–81 (9th Cir. 1985) (internal quotation marks omitted). If "the evidence yields conflicting inferences [regarding material facts], summary judgment is improper, and the action must proceed to trial." *O'Connor*, 311 F.3d at 1150.

The party moving for summary judgment bears the initial burden of identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant meets this burden, the burden shifts to the nonmovant to "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks and emphasis omitted); *see also* Fed. R. Civ. P. 56(c)(1).

## II.    Background[2]

On April 9, 2004, Plaintiffs entered into a Home Equity Line of Credit ("HELOC") with Defendant, establishing a line of credit of $50,000. (Doc. 70, ¶ 6.) Plaintiffs subsequently entered into two more HELOC agreements, increasing their line of credit by $50,000 and $183,800, respectively. (*Id.* ¶¶ 8, 10.) All three HELOCs were consolidated and secured by deeds of trust on Plaintiffs' home in Tucson, Arizona.[3] (*Id.* ¶¶ 2, 6, 8, 10.)

---

[2] The following recitation of facts is undisputed. Additional facts are discussed in subsequent sections as relevant.

As a preliminary note, Plaintiffs' 36-page controverting statement of facts (Doc. 72), which is responsive to Defendant's 8-page statement of facts (Doc. 65), is a gross violation of Rule 56.1(b) of the Local Rules of Civil Procedure. *See Pruett v. Arizona*, 606 F. Supp. 2d 1065, 1075 (D. Ariz. 2009) (explaining that Rule 56.1(b) does not permit explanation or argument). Plaintiffs use their controverting statement to "argue over the legal significance of facts, purport to dispute a fact simply because [Defendant] did not also include additional information that [Plaintiffs] think[] is important, [and] argue over semantics by identifying a fact as undisputed but then following with a needless re-wording of the fact[.]" *Lowe v. Maxwell & Morgan PC*, No. CV-15-02481-PHX-DLR, 2018 WL 4693532, at *1 n.1 (D. Ariz. Sept. 27, 2018). The Court has not considered any information provided by Plaintiffs in their controverting statement beyond whether the fact is disputed, whether there is an objection, and citations to evidence. The Court considers only the arguments set forth in the briefs. *See Pruett*, 606 F. Supp. 2d at 1075.

[3] For convenience, the Court hereinafter refers to the three consolidated

The HELOC has a maturity date of April 9, 2024. (*Id.* ¶¶ 6, 8, 10.)

Plaintiffs borrowed the full line of credit. (Doc. 72, ¶ 18.) Plaintiffs made timely minimum payments until defaulting on a monthly minimum payment due on October 19, 2009. (Doc. 70, ¶ 16.) Defendant sent Plaintiffs a letter on October 4, 2017, stating that a foreclosure would occur if Plaintiffs did not show the debt was invalid or pay the debt within 30 days. (Doc. 72, ¶ 33.) On November 27, 2017, Defendant filed a Notice of Trustee's Sale. (Doc. 72, ¶ 34.)[4]

**III. Discussion**

    **A. Statute of Limitations**[5]

Defendant contends that it is entitled to summary judgment because the statute of limitations on its right to foreclose did not begin running until it accelerated the debt in November 2017, through the initiation of foreclosure proceedings. Plaintiffs assert that Defendant's right to foreclose accrued no later than May 2011, which puts Defendant's October 2017 demand for payment outside of Arizona's six-year statute of limitations. Summary judgment will be granted in favor of Defendant.

There is a threshold legal question on which the parties disagree: when does the statute of limitations begin running on a claim for a borrower's default on a HELOC that has a defined maturity date? Plaintiffs argue that the statute begins running on the entire outstanding debt when the borrower first fails to make a full minimum monthly payment. They rely exclusively on the Arizona Supreme Court's recent decision in *Mertola, LLC v. Santos*, 422 P.3d 1028 (Ariz. 2018). Defendant relies on *Navy Federal Credit Union v. Jones*, 930 P.2d 1007, 1008 (Ariz. Ct. App. 1996), which set forth the longstanding rule

---

HELOCs simply as "HELOC."

[4] Plaintiffs neither admit nor dispute this statement of fact. Instead, they argue that Defendant failed to respond to a letter they sent to Defendant prior to the filing of the Notice—a point wholly irrelevant to the truthfulness of Defendant's statement. (Doc. 72, ¶¶ 34.1–34.2.) Because they failed to properly address Defendant's statement of fact, it is treated as undisputed. Fed. R. Civ. P. 56(e)(2).

[5] Both parties seek summary judgment on Plaintiffs' statute-of-limitations claim. The following analysis is based on Defendant's summary judgment motion so that Plaintiffs are given the benefit of all reasonable inferences. However, the Court considers all materials submitted in connection with both motions, including the briefing. *See* Fed. R. Civ. P. 56(c)(3) (court may consider other materials in the record).

that the statute of limitations "commences on the due date of each matured but unpaid installment and, as to unmatured future installments, the period commences on the date the creditor exercises the optional acceleration clause." For the following reasons, the *Navy Federal* rule applies.

In *Navy Federal*, the defendant's husband defaulted on a promissory note that was payable to the plaintiff over 15 years in equal monthly installments. *Id.* Years after the first missed payment, the plaintiff accelerated the balance on the note and then filed suit when the defendant did not pay. *Id.* The defendant argued that the plaintiff's claim accrued at the time of the first missed payment, thus making the plaintiff's claim untimely under the six-year limitation period. *Id.* The plaintiff argued that its claim did not accrue until it accelerated the balance on the note. *Id.* at 1008–09.

The Arizona Court of Appeals concluded that both parties were "partly correct." *Id.* at 1009. The defendant was "partially correct in contending that each time her husband defaulted on an installment payment, [the plaintiff] could have sued for the amount of that installment any time within the six-year statute of limitations." *Id.* The plaintiff was "also partly correct, however," because "the statute of limitations runs as to future installments from the date the creditor exercises the [optional] acceleration clause." *Id.* In other words, the statute of limitations does not commence on an unmatured installment unless the creditor accelerates it. *See id.*

In *Mertola*, the Arizona Supreme Court refused to apply the *Navy Federal* rule to credit-card debt, holding instead that "when a credit-card contract contains an optional acceleration clause, a cause of action to collect the entire outstanding debt accrues upon default: that is, when the debtor first fails to make a full, agreed-to minimum monthly payment." 422 P.3d at 1032. The court distinguished between closed accounts, which typically involve a fixed principal amount and defined schedule of repayment, and credit-card contracts, under which the ultimate debt, monthly payment, and final payment date vary depending on how the card is used and the current interest rate, and found that

> [b]ecause a closed-end installment contract involves an exact sum that must be paid in full in equal payments by an agreed-on date, a cause of action for

the entire balance owed will accrue no later than that date. After that date, the creditor may not prevent the statute of limitations from running simply by refusing to accelerate the debt.

Under credit-card contracts like the one at issue here, however, the date when the entire debt will become due is uncertain and may not occur until far in the future. To hold that a cause of action on the debt does not accrue until the creditor exercises his right to accelerate would vest the creditor with unilateral power to extend the statutory limitation period and permit interest to continue to accrue, long after it is clear that no further payments will be made, subject only to a standard of reasonableness and other equitable doctrines. This would functionally eliminate the protection provided to [borrowers] by the statute of limitations. We decline to extend such power to the creditor.

*Id.* at 1031–32.

Because the Arizona Supreme Court expressly declined to decide which rule applies "for other types of debt," Plaintiffs devote much of their briefing to arguing that HELOCs are open-end accounts, similar to credit-card accounts, and that the *Mertola* rule of accrual therefore applies. *Id.* at 1032. For two related reasons, their argument is unavailing.

First, *Mertola* did not announce a bright-line "open-end account versus closed-end account" rule. Although the court distinguished between the two types of accounts, it did so only to explain how the *Navy Federal* rule would give creditors of a certain type of open-end account (i.e., credit cards) the unfair ability to unilaterally extend the statute of limitations. *See id.* at 1031–32. Specifically, because the date when the entire debt becomes due on a credit-card account is uncertain, application of the *Navy Federal* rule "would vest the creditor with unilateral power to extend the statutory limitation period," thereby "functionally eliminat[ing] the protection provided to [borrowers] by the statute of limitations." *Id.* at 1032. This risk is not present with Plaintiffs' HELOC debt because their HELOC agreement clearly states a final maturity date. (*See* Doc. 56-1 at 1 (April 9, 2024).) And although the ultimate amount of debt is not certain, because the total debt "must be paid in full . . . by an agreed-on date, a cause of action for the entire balance owed will accrue no later than that date," which means "the creditor may not prevent the statute of limitations from running simply by refusing to accelerate the debt." *Mertola*, 422 P.3d

at 1032. In other words, the HELOC's defined due date eliminates the very risk that led the *Mertola* court to create a new rule for credit-card accounts.

Second, Plaintiffs' argument largely ignores the terms of their HELOC. *See id.* at 1033 ("Parties remain free to contractually define default and otherwise negotiate repayment of debt."). Defendant does not exaggerate in arguing that, to apply the *Mertola* rule, the Court would need to ignore the parties' clear contractual intent. Plaintiffs agreed that they would repay the entire outstanding principal "in a single payment" "[a]t maturity," and that, if they missed an interest payment, Defendant could, but was not required to, accelerate the principal. (Doc. 56-1 at 1–2; Doc. 56-2 at 1–2; Doc. 56-3 at 1–2.) Accepting Plaintiffs' position would make the HELOC maturity date meaningless and turn the optional acceleration clause—which generally is a protective device for the lender, *see Mertola*, 422 P.3d at 1030—into a sword for the debtor. Fundamental principles of contract law weigh against this result. *See Grosvenor Holdings, L.C. v. Figueroa*, 218 P.3d 1045, 1050 (Ariz. Ct. App. 2009) ("The purpose of contract interpretation is to determine the parties' intent and enforce that intent." (citing *Taylor v. State Farm Mut. Auto. Ins. Co.*, 854 P.2d 1134, 1138 (Ariz. 1993))).

Consequently, the *Navy Federal* rule applies. The maturity date for the entire debt was in 2024; therefore, if Defendant had not accelerated the debt, the six-year limitation period would have commenced at that time. *See Navy Fed.*, 930 P.2d at 1009; *cf. Bird v. Real Time Resolutions, Inc.*, 183 F. Supp. 3d 1058, 1062–63 (N.D. Cal. 2016) (applying California's version of the *Navy Federal* rule to a HELOC and finding that, if the lender had not accelerated, the four-year statute of limitations would have commenced in 2030, when the loan matured).

Because Defendant did accelerate the debt, however, the determinative issue is when that event occurred: this is the date on which Defendant's claim accrued and which marks the commencement of the statute of limitations.[6] Defendant contends that it

---

[6] When a claim "has accrued is 'usually and necessarily' a question of fact for the jury," but where the facts leave only one reasonable conclusion, the Court may decide the issue as a matter of law. *Thompson v. Pima County*, 243 P.3d 1024, 1028–29 (Ariz.

accelerated the debt on November 27, 2017, by initiating foreclosure proceedings. Plaintiffs rely almost entirely on their position that the statute of limitations began running on the entire debt at the time of their first default; in so doing, Plaintiffs fail to meaningfully develop an alternative argument regarding the specific date on which their debt was accelerated. (*See* Doc. 54 at 15 ("Perhaps Defendant gave notice of acceleration and perhaps not[.]"); Doc. 71 at 12 (same).)

To accelerate a debt, the creditor "must undertake some affirmative act to make clear to the debtor it has accelerated the obligation." *Baseline Fin. Servs. v. Madison*, 278 P.3d 321, 322 (Ariz. Ct. App. 2012). Arizona courts have held that a creditor accelerates a debt by repossessing property, sending a written demand for full payment, or filing suit to collect the debt. *See id.* at 323 (collecting cases). An internal write-off is not an affirmative act that accelerates a debt. *Id.* at 324.

Defendant initiated foreclosure proceedings on November 27, 2017, by filing a Notice of Trustee's Sale. (Doc. 72, ¶ 34.) This is an affirmative act that makes clear that the debt was accelerated. *Cf. Frei v. Hamilton*, 601 P.2d 307, 310 (Ariz. Ct. App. 1979) (filing a lawsuit to collect debt exercises acceleration clause). Furthermore, Defendant offers evidence that it did not accelerate the debt on an earlier date. (*See* Doc. 65, ¶¶ 24, 25; Doc. 65-2, Ex. B, ¶¶ 17–20 (declaration of Defendant's foreclosure manager stating that the debt was not accelerated until the Notice of Trustee's Sale).) This evidence, which Plaintiffs do not properly dispute or object to (*see* Doc. 72, ¶¶ 24.1–24.3, 25.1 (providing only one irrelevant citation to evidence)), satisfies Defendant's initial burden to show the absence of a genuine dispute regarding the acceleration date. *See Celotex Corp.*, 477 U.S. at 323.

In their response to Defendant's summary judgment motion, Plaintiffs only briefly touch on the specific question of when the debt was accelerated. None of their analysis, save one statement, is supported by citation to the record. (*See* Doc. 71 at 9–10.) This

Ct. App. 2010) (quoting *Doe v. Roe*, 955 P.2d 951, 961 (Ariz. 1998)); *see Kopacz v. Banner Health*, 425 P.3d 586, 589 (Ariz. Ct. App. 2018).

statement cites to a paragraph in their controverting statement of facts, asserting that the paragraph recites "the overt events that clearly and unequivocally signaled to the Plaintiff, as it would to any other reasonable borrower, that Defendant had exercised" the acceleration clause. (*Id.* at 10.) The cited paragraph, however, is comprised of improper argument, none of which is supported with citation to evidence. (*See* Doc. 72, ¶ 11.1.) Plaintiffs' summary judgment motion is no more helpful, as it is devoted entirely to their argument that the *Mertola* rule applies. Because invocation of an acceleration clause is not necessary under that rule, Plaintiffs do not argue when the debt was accelerated (or even that Defendant accelerated it). (*See* Doc. 54 at 12–13.)

Plaintiffs draw the Court's attention to the declaration of Plaintiff William Donges, who asserts that he called Defendant in September 2010 and spoke to an unnamed employee, who told Plaintiff that "the only payment accepted would be the entire $284,301.27." (Doc. 73, ¶ 13.) As a matter of law, however, no reasonable juror could find that this *Plaintiff-initiated* conversation was an "affirmative act" by Defendant to accelerate the debt. *Cf. Navy Fed.*, 930 P.2d at 1008–09 (finding creditor accelerated by sending written notice); *Wheel Estate Corp. v. Webb*, 679 P.2d 529, 531 (Ariz. Ct. App. 1983) (finding creditor accelerated by repossessing property); *Frei*, 601 P.2d at 310 (finding creditor accelerated by filing lawsuit).

Plaintiffs have failed to show a genuine dispute of material fact as to when their debt was accelerated. Because the record shows that Defendant accelerated the debt in 2017, Defendant's attempt to foreclose was well within the applicable six-year statute of limitations. Therefore, summary judgment will be granted in favor of Defendant on Count One and Count Five of the First Amended Complaint.[7]

### B. Promissory Estoppel

Defendant argues that it is entitled to summary judgment on Plaintiffs' claim of promissory estoppel because Plaintiffs can establish none of the elements of that claim. *See Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1106 (9th Cir. 2000)

---

[7] Although pleaded separately, Count One and Count Five both seek a declaration that the statute of limitations bars Defendant's right to foreclose.

(stating that summary judgment is appropriate if the moving party can "show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial"); *Mendiola-Martinez v. Arpaio*, 836 F.3d 1239, 1247 (9th Cir. 2016). Plaintiffs respond that they have made a showing sufficient to proceed to trial. The Court will grant summary judgment in favor of Defendant.

Plaintiffs' claim of promissory estoppel is based on a 1099-C that was issued by Defendant to Plaintiffs for the 2013 calendar year.[8] (Doc. 35 at 19–21.) The 1099-C states "289,691.63" as the "amount of debt discharged." (Doc. 72-5.) Plaintiffs allege that although they knew the 1099-C did not extinguish their debt, it nevertheless constituted an enforceable promise from Defendant to not attempt to collect the debt. (Doc. 35 at 20.) They allege that they reasonably relied on that promise by "undert[aking] several measures to preserve long term residency in the property securing the cancelled debt and . . . under[taking] several measures to improve [their] financial condition, such as efforts to obtain a reverse mortgage." (*Id.* at 21.)

Under Arizona law, "[p]romissory estoppel provides an equitable remedy that renders a promise enforceable, where a promise has been made which the promissor should reasonably foresee would cause the promisee to rely, and upon which the promisee actually relies to his detriment." *Sholes v. Fernando*, 268 P.3d 1112, 1117 (Ariz. Ct. App. 2011) (internal citations, quotations marks, and brackets omitted). Detrimental reliance requires a "substantial and material change of position . . . for the worse." *Weiner v. Romley*, 381 P.2d 581, 584 (1963); *see Leal v. Allstate Ins. Co.*, 17 P.3d 95, 99 (Ariz. Ct. App. 2000).

The Court agrees with Defendant that Plaintiffs cannot show that they detrimentally relied on the 1099-C. To support their argument, Defendant points to evidence that Plaintiffs attempted to negotiate a settlement of the debt *after* issuance of the 1099-C. (*See* Doc. 65-2, Ex. C, at 19; Doc. 73, ¶¶ 20–23.) Plaintiffs' claim of detrimental reliance is

---

[8] A 1099-C is an IRS form that lenders must file when they discharge debts. It is not conclusive evidence that a debt is cancelled, or that the lender will cease trying to collect the debt; under Arizona law, though, it is prima facie evidence that a debt has been discharged. *See Amtrust Bank v. Fossett*, 224 P.3d 935 (Ariz. Ct. App. 2009).

belied by their attempt to settle (for a very substantial sum, 50% of $280,000) what they allegedly thought was an uncollectable debt. Thus, this evidence is sufficient to shift the burden on summary judgment to Plaintiffs, who have the ultimate burden of persuasion at trial. *See Fritz Cos.*, 210 F.3d at 1106.

Plaintiffs offer no evidence on which a reasonable jury could find that they reasonably relied to their detriment. They merely deny, both in their argument and in the cited documents that purportedly support their argument, that their settlement offer is linked to whether they relied on the 1099-C. (*See* Doc. 71 at 13–14 (citing Doc. 72, ¶¶ 27.1–27.3, 28.1–28.2).) This is insufficient. *See Fritz Cos.*, 210 F.3d at 1103 ("If . . . a moving party carries its burden of production, the nonmoving party *must produce evidence* to support its claim or defense." (emphasis added)).

Furthermore, the only specific act of reliance alleged by Plaintiffs in the First Amended Complaint is their attempt to "improve [their] financial condition" by obtaining a reverse mortgage, which they concede was unsuccessful. (*See* Doc. 35 at 21; Doc. 67.) Because they failed to "improve [their] financial condition," they remained in the same position they were in prior to the issuance of the 1099-C (i.e., in significant financial debt). Thus, Plaintiffs have offered nothing to suggest that their reliance on Defendant's promise substantially and materially worsened their position. *See Weiner*, 381 P.2d at 584. This failure is fatal to their claim.

### C. Estoppel by Inaction & Estoppel by Misrepresentation[9]

On October 4, 2017, Defendant sent Plaintiffs a "Notice of Demand for Payment," stating that Plaintiffs' loan was "in serious default," that Plaintiffs had "the right to cure," and that if Plaintiffs did not cure their default within 30 days, Defendant would "accelerate [the] loan . . . ." (Doc. 65-4, Ex. J, at 9.) On November 15, 2017, Defendant sent a second default notice. (Doc. 72, ¶ 35.) The second notice states that Defendant "will assume the

---

[9] The Court is unaware of any claim under Arizona law called "estoppel by inaction." "Estoppel by misrepresentation," on the other hand, is another name for "equitable estoppel." *See St. Joseph's Hosp. & Med. Ctr. v. Reserve Life Ins. Co.*, 742 P.2d 808, 818 (Ariz. 1987). Plaintiffs admit that these claims were "poorly" and "inartfully" crafted, and they would have withdrawn the claims had the Court granted them leave to file a second amended complaint. (*See* Doc. 71 at 14; Doc. 78 at 1.)

debt to be valid unless [Plaintiffs], within thirty days after receipt of th[e] notice, dispute the validity of the debt or a portion thereof." (Doc. 65-4, Ex. K, at 12.) On November 27, 2017 (12 days after the second notice), Defendant filed a Notice of Trustee's Sale. (Doc. 72, ¶ 34.)

Plaintiffs allege in their First Amended Complaint that they sent a letter on October 25, 2017, disputing the validity of the debt. (Doc. 35, ¶ 60.) They do not properly present this assertion as an undisputed statement of fact, but they provide evidence that they did in fact send the letter. (*See* Doc. 73, ¶ 28.) Defendant, through its attorneys, failed to respond to the letter. (Doc. 35, ¶ 123; Doc. 73, ¶ 29.)

In their claim for "estoppel by inaction," Plaintiffs allege that Defendant's failure to respond to their dispute letter "can only be interpreted in favor of" their claim that the notice of default was defective. In their equitable estoppel claim, they allege that Defendant misrepresented in the second notice that they had 30 days to dispute the debt, since Defendant planned to and did initiate foreclosure proceedings less than two weeks later. Plaintiffs also allege that both acts were a violation of the Fair Credit Reporting Act.[10]

As an initial matter, Plaintiffs have not stated a claim for violation of the Fair Credit Reporting Act, much less offered any evidence that Defendant violated the Act. *See Snyder v. HSBC Bank, USA, N.A.*, 913 F. Supp. 2d 755, 778 (D. Ariz. 2012) (stating requirements of claim). Plaintiffs do not specify in their First Amended Complaint which statutory provision Defendant allegedly violated. Nor do they use their summary judgment response as an opportunity to provide clarification.

Furthermore, Plaintiffs' argument completely ignores the elements of an estoppel claim: "(1) the party to be estopped commits acts inconsistent with a position it later adopts; (2) reliance by the other party; and (3) injury to the latter resulting from the former's repudiation of its prior conduct." *Gorman v. Pima County*, 287 P.3d 800, 804–05 (Ariz.

---

[10] Defendant's summary judgment motion purports to challenge only the equitable estoppel claim, but Plaintiffs acknowledge that, in substance, it also challenges the "estoppel by inaction" claim. (Doc. 71 at 14–15.)

Ct. App. 2012) (quoting *Valencia Energy Co. v. Ariz. Dep't of Revenue*, 959 P.2d 1256, 1267–68 (Ariz. 1998)). As Defendant points out, the facts belie Plaintiffs' claims. First, Plaintiffs *did* receive 30 days to dispute the debt. They received the first notice of default on October 4, 2017, and sent a dispute letter on October 25, and Defendant initiated foreclosure proceedings on November 27. Next, Plaintiffs misread the second notice; it states only that Plaintiffs had 30 days to dispute the debt, not that Defendant would wait 30 days before filing the Notice of Trustee's Sale. (Doc. 65-4, Ex. K, at 12.) Thus, Defendant has offered evidence that it did not make a misrepresentation or act inconsistently.

Additionally, Plaintiffs acknowledge that the heart of their claims is that Defendant denied them the opportunity to dispute the validity of Defendant's right to foreclose. (*See* Doc. 71 at 15 (complaining that Defendant never responded to their dispute letter and stating that "Defendant should be estopped because the default letter sent to Plaintiff[s] did not give Plaintiff[s] the mandated time to dispute the debt").) Thus, assuming Defendant made a misrepresentation or acted inconsistently, for two reasons, there is no evidence of injury: first, Defendant's right to foreclose is not barred by the statute of limitations; second, Plaintiffs received the opportunity to dispute the debt by means of this litigation.[11]

The foregoing is sufficient to shift the burden to Plaintiffs, who must come forward with evidence to show a genuine factual dispute. They have failed to do so, offering only unsupported denials and improper responses to Defendant's statements of fact. (*See* Doc. 71 at 14–16; Doc. 72, ¶¶ 33.1–33.4, 34.1–34.2.) Summary judgment is therefore appropriate.

**IT IS ORDERED:**

1. Plaintiffs' Requests for Judicial Notice (Docs. 74, 75) are **granted**.

2. Plaintiffs' Motion for Partial Summary Judgment (Doc. 54) is **denied**.

. . . .

. . . .

---

[11] Defendant agreed to delay the foreclosure sale pending resolution of this case. (Doc. 26.)

3. Defendant's Motion for Summary Judgment (Doc. 64) is **granted**.

Dated this 30th day of April, 2019.

_____
Honorable Rosemary Márquez
United States District Judge