William R. Donges
5514 N. Crescent Ridge Drive
Tucson, AZ 85718
520-529 6227
bdonges@attglobal.net

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| WILLIAM R. DONGES AND CAROLYN R. DONGES, h/w,<br><br>Plaintiff,<br><br>vs.<br><br>USAA FEDERAL SAVINGS BANK,<br><br>Defendant | Case No.: CV18-0093-TOC-RM<br><br>MOTION TO STAY JUDGMENT PENDING APPEAL, UNOPPOSED[1]<br><br>(ASSIGNED TO HONORABLE ROSEMARY MARQUEZ) |
|---|---|

On April 30, 2019, the Court granted Defendant's motion for summary Judgment (Dkt, 84). On May 9th, 2019, the Court issued an Order directing the Clerk of the Court of to enter judgment in favor of Defendant and close the case. (Dkt 85) In a footnote to the Order, the Court noted: "Defendant agreed to postpone foreclosure proceedings pending resolution of this matter (Doc 27). The matter has now been resolved entirely in Defendant's favor, so postponement is no longer required." On May 29, 2019, Plaintiff filed a timely Notice of Appeal to the Ninth Circuit Court of Appeals. (Dkt 88) While Plaintiff has yet to prepare his Opening Appellant Brief in the matter, he intends to assert that in granting Summary Judgment in favor of Defendant the District Court made several prejudicial errors which the

---

[1] In an email dated June 13, 2019, Defendant's attorney informed Plaintiff that USAA FSB would not oppose Plaintiff's request for a stay pending appeal.

1

Circuit Court is likely to either overturn or in the alternative return to the District Court for trial. A foreclosure action on Plaintiff's Property currently scheduled for July 29, 2019 or during the pendency of appeal would render the appeal moot resulting in substantial harm to Plaintiff. Therefore, Plaintiff respectfully asks the court to stay its Order directing the Clerk of the Court to enter Judgment on Defendant's favor and close the case or, in the alternative, grant a Preliminary Injunction against foreclosure for the duration of the appeal.

## I. BACKGROUND

Plaintiff filed his initial complaint in Arizona Superior Court for Pima County on January 17, 2018, claiming Defendant's foreclosure action on November 27, 2017 took place after the expiration of the statutory limitation period codified in A.R.S. 12 §548(A)(1) and that said action should be time barred. (Arizona Superior Court for Pima County, case C20180251) Defendant removed the case to Federal District Court based on a diversity claim. (Dkt 1) Defendant timely answered Plaintiff's Complaint. (Dkt 11)

In mid-March 2018, Plaintiff filed a Motion for Temporary Restraining Order (Dkt. 21, amending Dkt.19), Motion for Preliminary Injunction (Dkt 20) and a Memorandum covering both Motions (Dkt 22). The parties conferred and reached an agreement on the issue of Plaintiffs' request for a Temporary Restraining Order and Preliminary Injunction effectively staying any foreclosure during the pendency of the action. On March 22, 2018, the Court issued an Order granting the stipulation. (Dkt 27)

MIDP was completed by Defendant on April 5, 2018 (Dkt 29) and by Plaintiff on April 6, 2018. (Dkt 30) A Joint Case Management Plan was filed on May 13, 2018. (Dkt 34) After a telephonic conference with Lorenzo Morales, Law Clerk to the Honorable Rosemary Marquez, the Court issued its Scheduling Order on May 23, 2018 establishing August 21, 2018 as the close of discovery and September 14, 2018 as the latest filing date for dispositive motions. (Dkt 32)

On May 18, 2018, Plaintiff with consent of Defendant issued a Motion to Amend Complaint to add clarity to his factual statements and add four new claims. (Dkt 33). The Court granted the request to amend on June 5, 2018 (Dkt 34). Plaintiff filed a First Amended Compliant on June 8, 2018 (Dkt 35) The FAC asserts five claims involving a single fundamental, possibly dispositive, issue of whether Defendant USAA FSB forfeited its right to foreclose on Plaintiff's home by waiting too long to initiate its foreclosure proceedings. Plaintiff's Claim One asserts the statute of limitations under A.R.S 12-548 (A) (1) bars USAA FSB from initiating any legal action on the underlying debt recorded in the three home equity lines of credit (HELOC) agreements, hereinafter referred to as HELOC 1055, as well as any foreclosure actions on the three trust deeds securing that debt. Plaintiff's Claim Two alleges Promissory Estoppel based upon a promise of the Defendant communicated through an IRS 1099-C with an Event Code G, No Further Collection Activity, accompanied by no further clarification or explanation or disclaimers, that it would not pursue further collection of the outstanding balance on HELOC 1055, a promise it kept for almost four years until it filed its foreclosure action. Plaintiff Claim Three alleges Estoppel by Inaction, arising from USAA FSB's failure to respond to Plaintiff's letter disputing the information shown on Defendant's Notice of Default issued on October 4, 2017. Plaintiff's Claim Four alleges Estoppel by Misrepresentation based upon Defendant's statement in a letter dated November 15, 2017 that it would assume the information shown in the letter to be valid unless within 30 days Plaintiff disputed its validity and then filing anyway without responding to Plaintiff's dispute. Plaintiff's fifth claim seeks a title-clearing through an order cancelling each of the three trust deeds currently recorded in the Pima County Recorder's Office with Defendant USAA as beneficiary and Defendant USAA's nominee as Trustee. Defendant answered on June 21, 2017. (Dkt 36)

On or about June 11, 2018, Plaintiff submitted a Request to Defendant for the Production of Documents. On or about June 15, 2018, Plaintiff filed Plaintiff's First Set of Interrogatories to Defendant. Defendant answered Plaintiff's Request for the Production of

Documents and First Set of Interrogatories on July 23, 2018. In several emails and telephonic conferences Plaintiff clearly communicated his objection to Defendant's lack of response to Plaintiff's requests and his objection to the belligerent commentary in its answers that Plaintiff believed to be a blatant violation of Fed.R.Civ.P. 26. All requests and responses were communicated directly between the parties without a Notice of Service.

As Plaintiff and Defendant were unable to resolve disputed discovery requests, Plaintiff contacted Lorenzo Morales, Judge Marquez's law clerk to request leave to file a Motion to Compel which led to Plaintiff request to the Court for leave to file a Motion to Compel. Clerk Morales conducted a telephone briefing on September 14, 2018 at which time both parties presented their arguments. Mr. Morales asked Plaintiff to provide a copy of his informal meeting notes. Plaintiff complied. On September 26, 2019, the Court, without oral briefing, ordered Plaintiff to file a Motion to Compel. (Dkt 45).

On September 9, 2018, Plaintiff filed a Motion to Compel Dkt 46), a Memorandum with Exhibits (Dkt 47) and a Declaration (Dkt 49) in support of his motion. Defendant responded with a Motion to Strike Plaintiff's Motion to Compel, Memorandum and Declaration asserting exceeding page limits and late filing of the Memorandum and Declaration. (Dkt 50) Plaintiff responded with an explanation and apologies. (Dkt 51) On November 11, 2018, the Court denied Defendant's Motion to Strike and denied Plaintiff's Motion to Compel and established an amended Scheduling Order with a filing deadline of December 11, 2018 for Dispositive Motions (Dkt. 82)

On December 11, Plaintiff filed a First Motion for Partial Summary Judgment (Dkt 54), Statement of Facts (Dkts. 55, 56, 57, 58, 59, 60, 61, 62, 63), Affidavit of William Donges (Dkt 66) and Declaration re Settlement Offer (Dkt 67). The Declaration was included based on the possibility that Defendant could raise a claim that the settlement discussion June 2014 could be interpreted as tolling the statute of limitations, a claim that Defendant did not raise.

On December 12, 2018, Defendant filed a Motion of Summary Judgment and Statement of Facts addressing four of the five claims in Plaintiff's FAC. (Dkts. 64, 65)

On January 10, 2019, Defendant filed a Response to Plaintiff's Motion for Partial Summary Judgment (Dkt. 69) and a Controverting Statement of Facts (Dkt 70). Virtually simultaneously, Plaintiff filed a response in opposition to Defendant's Motion for Summary Judgment (Dkt 71), a Controverting Statement of Facts (Dkt 71), and a Declaration of William Donges (Dkt 73).

On January 16, 2019, Plaintiff Filed two Requests for Judicial Notice (RJN). The purpose of RJN, Banking and Mortgage Crises, was to remind the court of the dire economic conditions in the banking industry and the residential mortgage market up to and including the time of Plaintiff's default in HELOC 1055. (Dkt 74) The purpose of RJN, Credit Plans, Statutes, Regulations & Guidelines was to provide additional expert information on the characteristics of a HELOC vs installment loans in order to assist the Court in its analysis of arguments and caselaw cited by Plaintiff and in selecting on-point caselaw to apply in instant case. The Court granted both RJNs although there is no indication in the record that the Court ever took judicial notice of the facts presented in those documents. (DKT 83)

On January 25, 2019, Plaintiff submitted his reply to Defendant's Response to Plaintiff's Motion for Partial Summary Judgment (Dkt 76). On the same date, Defendant filed its reply to Plaintiff's response to Defendants Motion. (Dkt 77) The respective Motions for Summary Judgment were fully briefed.

On February 5, 2019, Plaintiff filed a Motion for Leave to file a Second Amended Complaint (SAC) with Exhibits and a redline version of the SAC. (Dkt 78) The purpose of the SAC was to remove two of the inartfully drafted claims in the FAC which, were poorly responded to by Defendant. The SAC introduced two new claims alleging violations of the Arizona Consumer Fraud (A.R.S. § 44-1522), an unlawful practice, and Arizona Recording

5

False Lien Documents Act (A.R.S. § 33-420). Both claims provide for a private cause of action with specific remedies. The material facts supporting these claims were discovered in the process of developing Plaintiff's Controverting Statement of Facts filed January 10, 2019. (Dkt 72) Both claims were well pled and supported not only by assertions of fact, but material evidence of the fraud and false document filed by USAA FSB, all of which is preserved in the record.

On April 10, 2019, the Court denied Plaintiff's Motion to Amend Complaint for reasons of lack of diligence in filing the motion, good cause and the erroneous statement that all of the facts were in the possession of the Plaintiff long before the request was filed and 'probably' before they filed the lawsuit. (Dkt. 82). The Court's Order is one of the subjects of Appeal.

On May 31, the Court file its Order denying Plaintiff's Motion for Partial Summary Judgment and Granting Defendant's Motion for Summary Judgment. (Dkt. 83) The Courts ruling denying Plaintiff's Claim One. Statute of Limitations Bars Foreclosure. is the subject of Plaintiff's Appeal.

On April 5, 2019, the Court ordered the Clerk of the Court to enter Judgment in favor of Defendant and against Plaintiff. A footnote to the Order rescinded the agreement to postpone foreclosure proceedings. (Dkt 84).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 8(c) (c) states: "While an appeal is pending from an interlocutory order or final judgment that grants, dissolves, or denies an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights." Federal Rule of Appellate Procedure 8(a)(1) states: "A party must ordinarily move first in the district court for the following relief: (A) a stay of the judgment or order of the district court pending appeal[.]" Plaintiff submits this motion

requesting continuance of the agreement to postpone the foreclosure sale (Dkt.26.) or issuance of stay of the foreclosure sale currently scheduled for July 29, 2019 pending adjudication of his appeal. If the instant Motion is not granted, Plaintiff will suffer irreparable injury, in the form of the loss of his home and eviction therefrom.

The United States Supreme Court has set forth a four-factor test for granting a stay pending appeal: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009). A party requesting a stay pending appeal bears the burden of showing that the circumstances justify the extension of the stay. As discussed below, each of the four factors in this case supports issuance of a stay here.

In deciding an application for a preliminary injunction under F.R. Civ. 65, courts in the Ninth Circuit look to the following factors: the movant has shown a likelihood of success on the merits; there is a likelihood that the movant will suffer irreparable harm in absence of a preliminary injunction; the balance of equities tips in the movant's favor; the injunction is in the public interest. *Stormans, Inc. v. Selecky,* 586 F.3d 1109, 1127 (9th Cir. 2009) Under a sliding scale variant on the standard, if a plaintiff can only show by a lesser standard that there are serious questions going to the merits, then a preliminary injunction may still issue if the balance of hardships tips sharply in the plaintiff's favor, and the other two factors are satisfied. *Alliance for The Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

III.  ARGUMENT

    A.    **Likelihood of Success on the Merits**

While Plaintiff is in the early stages of formulating his Opening Appellate Brief due for submission on July 29, 2019, he intends to focus the appeal on the decision of the District

7

Court to Deny Plaintiff's Motion for Partial Summary Judgment in Count One, Statute of Limitations Bars Foreclosure, First Amended Complaint (Dkt 35)  There are other matters in which Plaintiff asserts the District Court erred in denying Plaintiff's requests, but these are peripheral to the central question of whether Defendant initiated a legal foreclosure action on Plaintiff's Property within the six-year limitations period established by the Arizona Legislature in Arizona Revised Statutes § 12-548 (2014), Contract in writing for debt; six year limitation; choice of law.

Plaintiff asserts that the District Court erred in its interpretation of various material facts cited by Plaintiff and in the application of law to those facts.  Plaintiff fully understands that when considering a motion for summary judgment, a judge will view all evidence in the light most favorable to the movant's opponent. But Plaintiff asserts that the exceptionally bright light shown on the Defendant's evidence and its arguments while casting a shadow on Plaintiff's equally compelling material facts and arguments.  Many of Plaintiff's arguments in its Motion for Partial Summary Judgment, his responses to Defendant's Motion for Summary Judgment and his replies were either ignored or significantly misinterpreted to the extent that, in some cases, the District Court's analysis misconstrues Plaintiff's assertions. Plaintiff intends in its Opening Appellant Brief to fully discuss each of the Plaintiff's countervailing material facts cited in the record and the actual arguments raised in his pleadings in the expectation that such a review will reveal that the weight of those facts and arguments should balance in favor of granting summary judgment in favor of Plaintiff or, at the very least, reveal a genuine dispute for resolution at trial.

Plaintiff argues and offers citations to evidence in the record that render indisputable the fact that HELOC Agmt(s) 1055, the subject loan agreements, describe an interest-only, revolving credit plan secured by the residential real estate.  Defendant argues and frequently refers in its pleading to the subject loan agreement as a closed-end installment loans while citing numerous installment loan cases as its authorities.  One of the difficulties the parties

and the district court face in adjudicating this case is that it is highly unusual for a lender to allow a defaulted HELOC agreement to sit on its books for more than six-years with no post-default collection or foreclosure action. The reason Defendant did so can only be speculated upon although perhaps the conditions of the banking crises played a role.  (See Dkt 74, Request for Judicial Notice, Banking Crises…)  By contrast, there is a considerable body of caselaw addressing the limitations period in cases involving consumer installment and mortgage loans which Defendant freely cites, despite the dissimilar characteristics of the two types of credit plans.  This fundamental dispute in the subject credit plans is one of the issues that should have been presented to a jury and which now issues for consideration by the Court of Appeals.  An example of just one issue for appeal is the fact that in March 2011, Defendant reduced the credit limit in the subject loan agreements to zero thereby triggering the provisions in §6 of HELOC Agmt(s) 1055, which without notice, made the outstanding principal balance immediately due, an action that along with the defaulted accrued finance charges as of May 19, 2011 made the outstanding balance due and in default starting the run of the Statute of Limitations.

A further example of an issue for appeal is the fact that the heading section of the loan documents show a Credit Limit and a Maturity Date, although only the Credit Limit is defined in HELOC Agmt(s) 1055, §1.  Plaintiff argues that under the terms of a draw-only home equity line of credit the borrower can draw advances on the available credit throughout the specified draw period.  The Draw Period is defined as beginning on the Date of the Agreement and continuing for the number of months in the Draw Period up to the Maturity Date when the outstanding balance is due in a single balloon payment.  Defendant's adverse action to bar further advances and its final action to terminate the credit line as documented in the record had the effect of reducing the draw period to zero months thereby advancing the maturity date to the date of adverse action, which made the outstanding principal balance immediately due.  Each of these two adverse actions resulted in the outstanding principal balance coming due as of March 31, 2011, thus satisfying the terms of HELOC Agmt(s)

9

1055, §19A, Termination and Acceleration. As of May 19, 2011, the final default in payment of accrued finance charges took place and since Defendant barred further interest computations and periodic statement production/submissions no future billed or defaulted payments appear in the record. The combination of defaulted principal balance and defaulted accrued finance charges make up the defaulted outstanding balance.

In its Section III A of its Order dated May 31, 2019, the Court states:

> Defendant contends that it is entitled to summary Judgment because the statute of limitations on the right to foreclose did not begin running until it accelerated the debt in November 2017, through the initiation of foreclosure proceedings. Plaintiffs assert that Defendant's right to foreclose accrued no later than May 2011, which puts Defendant's October 2017 demand for payment outside Arizona's six-year statute of limitations. Summary Judgment will be granted in favor of Defendant.
>
> There is a threshold legal question of which the parties disagree: when does the statute of limitations begin running on a claim for a borrower's default on a HELOC that has a defined maturity date? Plaintiff's argue that the statute of limitations begins running on the entire outstanding balance when the borrower first fails to make a full minimum monthly payment. They rely exclusively of the Arizona Supreme Court's recent decision in Mertola, LLC v. Santos, 422 P.3d 1028 (Ariz. 2018).

Dkt 83, Pg. 3, 10-21

The foregoing quotation misstates Plaintiff's argument. First, Plaintiff never made the argument that the statute begins running on the entire debt when the borrower first fails to make a full minimum monthly payment. Plaintiff argued extensively in its Motion for Partial Summary Judgment, its responses to Defendant's Motion for Summary Judgment and

in its Reply to Defendant response, that the run of the statute of limitations should start on the final payment default of the accrued finance charges which occurred on May 19, 2011. This argument conforms to established rules for the limitations period in open-end loan agreements. It also represents the final payment event ever billed or defaulted upon in the record of HELOC 1055. There is no record of Defendant ever billing Plaintiff for 76 of the 85 missed installment payments it claimed in its statement of facts. The evidence in the record is that those 76 claimed payments were false, a cited fact the Court chose to ignore.

Likewise, the District Court erred in its statement that Plaintiff's relied exclusively on the *Mertola* decision. Plaintiff cited Mertola solely as an example of a higher court taking notice of the clear difference between an open-end credit plan, such as home equity lines of credit and revolving credit cards, and a closed-end installment loan, such as the cited Navy Federal promissory note. Plaintiff did not then and will not argue before the Ninth Circuit Court of Appeals that the 'brightline' rule established by the Arizona Supreme Court in Mertola should apply to the instant case. Having said that one can make use of a word processor's 'find and replace' function on the *Mertola* ruling replacing the word "credit card" with the word 'HELOC' and with the exception of the minor difference between an expiration date and a maturity date, both of which act as an end to the current state of an active agreement, the resulting text will read like an on-point citation in a HELOC limitations matter.

The Court further states in Dkt 83, Pg. 3, 21-22: Pg. 4, 1-3: " Defendant relies on *Navy Federal Credit Unit v. Jones*, 930 P.2d 1007, 1008 (Ariz. Ct. App. 1996), which sets forth the longstanding rule that the statute of limitations 'commences on the due date of each matured but unpaid installment and, as to unmatured future installments, the period commences on the date the creditor exercises the [opto]ional] acceleration clause." Yet, HELOC Agmt(s) 1055 makes no reference to 'installment payments. The only two types of payment specified in HELOC Agmt(s) 1055 are the payment of accrued finance charges (but

only when) presented on a Period Statement and a final payment of the outstanding balance as a balloon payment at maturity. (HELOC Agmt(s) 1055, §§11,12,13) The record for HELOC Acct. 1055 shows clear evidence of defaulted payments of accrued finance charges beginning in October 2009 and continuing through May 19, 2011 when the final default occurred. There is no record of any unmatured future installments as mentioned in *Navy* to which Defendant could apply an optional acceleration clause.

According to the District Courts Order: "(t)he maturity date for the entire debt was in 2024; therefore, if Defendant had not accelerated the debt, the six-year limitations period would have commenced at that time". (Dkt 83, Pg. 6: 17-19). The possible delay of a potential foreclosure action with its attendant uncertainty and anxiety for 13-years after the final default in May 2011 may be legal but certainly not equitable.

The terms and condition recited in HELOC Agmt(s) 1055 conform to model agreement forms approved by the Consumer Financial Protection Bureau which conform to all federal regulations governing open-end loan agreements. Plaintiff made diligent efforts to describe and gave citations to applicable federal publications that describe the attributes of home equity lines of credit as well at the differences between HELOCs and other consumer credit plans. Plaintiff asserts that the District Court should have analyzed the subject loan agreement and applied limitations rules based on the characteristics and construction of an open-end revolving credit plan credit rather than applying rules and cases derived from fixed term installment, promissory note, like the cited *Navy Federal*.

Plaintiff has argued in his pleading that an open-end, home equity line of credit has unique characteristics, construction and administrative requirements that should be analyzed in relation to other similar open-end revolving credit cases when applying legal precedents. Cases citing precedents and rules involving actions on limitations periods in open-ended home equity credit lines are rare as most banks will pursue their right to foreclose well within the limitations period. Absent a body of on-point cases, Plaintiff asserts that given a fuller

analysis of the characteristics of open-end credit plans, a more critical assessment of Defendant's facts and arguments, and with a brighter light shown on Plaintiffs, non-attorney drafted pleadings, the District Court may have arrived at a different conclusion.

The District Court Judge in this case has an impeccable reputation for fairness. Given the tremendous drug and immigration workload faced by the District Court of Arizona, Tucson, the instant case has been dealt with expeditiously. Plaintiff believes he has been treated fairly, and despite his frequently wordy and inartful pro se pleadings, respectfully. Nevertheless, the decision of the Court was wrong.

Plaintiff strongly believes that a more effective presentation of the recorded facts gained in part from hindsight and with a more artful pleadings, he will be able to convince a three-judge panel at the Ninth Circuit Court of Appeals of the merits of the facts in the record and his arguments. But regardless of the outcome, the decision of the Ninth Circuit Court of Appeals will make a valuable contribution to the body of precedents available to guide other litigants and district courts in the resolution of matters involving statute of limitations claims in home equity line of credit disputes.

In *Guzman v. Shewry*, 552 F.3d 941, 948 (9th Cir. 2009), the Court cited. "At an irreducible minimum, the moving party (in a motion to stay) must demonstrate a fair chance of success on the merits or questions serious enough to require litigation. Both factors are present in this Motion for Stay Pending Appeal.

**B.     Absent a Stay, Plaintiff and the Public Will Be Irreparably Harmed by the Court's Decision**

Plaintiff seeks this stay enjoining any current or future trustee sales of the Plaintiff's property and residence at 5514 N. Crescent Ridge Drive, Tucson, AZ 85718 until such time as the Ninth Circuit Court of Appeals can adjudicate the matter and either confirm or vacate the District Court ruling or, alternatively, refer the matter back to the District Court for trial.

Absent a stay to a foreclosure action the trustee's sale will take place on July 29, 2019 resulting in the deprivation of Plaintiff's home and residence as well as serious financial and psychological harm to the Plaintiff. It will also render Plaintiff's appeal moot ending Plaintiff's right to appeal.

### C. A Stay Will Not "Substantially Harm" Defendant but the Absence of a Stay could Substantially Harm Plaintiff.

The balance of equities tips in Plaintiff's favor because the issuance of a stay until the Ninth Circuit Court of Appeals can hear the matter and either confirm or vacate the District Court's Order or return the matter to the District Court for trial only maintains the status quo of the Defendant. Defendant was comfortable waiting more than six-years to imitate its foreclosure action another period of appeal should not present an undue hardship to the 33td largest commercial bank in the United States. But allowing a wrongful foreclosure to take place will inequitably erode the Plaintiff's property rights and opportunity for judicial process.

### D. Public Interest Will be Served by Avoiding a Foreclosure

The public interest is served by avoiding the possibility of a wrongful foreclosure disturbing the environment of Plaintiff's close-knit neighborhood and by protecting the continued recovering neighborhood property values.

### E. Plaintiff Requests Issuance of the Stay Without Bond

District Courts may also exercise their discretion to grant unsecured or partially secured stays. Such stays are warranted only in "unusual circumstances," where granting such a partially secured or unsecured stay would not endanger the judgment creditor's interest in ultimate recovery. In the instant case, the stay is requested on a non-money judgment in which Defendant, if successful on appeal, will have the right to foreclose on the subject Property

recovering all of the Plaintiff's debt. By the time the appellate court issues its decision, the property will continue to accrete in value so that the proceeds from the sale will be sufficient for Defendant to recover all reasonable attorney fees and non-taxable expenses allowed by the Court. Plaintiff agrees to waive any right to dispute any Court approved attorney fees and non-taxable expenses. While judges are not required to consider the economic circumstances of the appellant, the Plaintiff respectfully requests the Court to recognize his very limited financial resources and allow this appeal to go forward without a bond.

## IV. CONCLUSION

Having satisfied each of the four standards of a stay and injunctive relief, without opposition of Defendant, Plaintiff asks the Court to issue an Order staying any current or future foreclosure action on any of the Trust Deeds held by Defendant securing its interest in the three HELOC loan agreements that make up HELOC Acct. 1055 until such time as the Ninth Circuit Court of Appeals has issue its decision to confirm, vacate or return for trial the District Court's decision to deny Plaintiff's Motion for Partial Summary Judgement.

RESPECTFULLY SUBMITTED: This 17th day of June 2019

/s/William R. Donges, Pro Se

## CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of June 2019, I transmitted the foregoing document to the U.S. District Court Clerk's Office by using the CM/ECF, which transmitted a Notice of Electronic Filing to:

John Spencer Craiger

Polsinelli PC Phoenix AZ

1 E Washington St., Ste 1200

Phoenix, AZ 850024

jcraiger@polisineeli.com

Lead Attorney, Attorney to be Noticed

| By: | s/William R. Donges |
|---|---|
| | William R. Donges, *pro se* |